FILED

05/02/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0336

DA 22-0336

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 77N

IN THE MATTER OF THE ESTATES OF
MARY JOE FOX and MARK ROBERT FOX,

JERRY O'NEIL,

       Appellant,

  v.

JEAN FOX, Personally and as Personal
Representative of the Estates,

       Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause Nos. DP-18-117C
and DP-20-323A
Honorable Heidi J. Ulbricht, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Jerry O'Neil, Self-represented, Columbia Falls, Montana

      For Appellee:

         Jean Fox, Self-represented, Kalispell, Montana

                Submitted on Briefs:  March 8, 2023

                      Decided:  May 2, 2023

Filed:

                           Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jerry O'Neil (O'Neil), the former personal representative of the Estates of Mary Joe Fox (Mary) and Mark Robert Fox (Mark), appeals from the deemed denials of his February 3, 2022 Motion to Alter or Amend the Judgment and March 31, 2022 Motion to Reconsider and Restore Personal Representative. O'Neil's motions followed the District Court's December 3, 2021 Findings of Fact, Conclusions of Law, and Order on Heir Jean Fox's Motion to Terminate and Remove the Personal Representative for Cause issued by the Eleventh Judicial District Court, Flathead County, in Mary's probate, and the March 3, 2022 Order by the District Court which terminated O'Neil as personal representative in Mark's probate and consolidated both probates into one matter. We affirm.[1]

---

[1] On appeal, O'Neil has also raised a constitutional challenge to § 26-1-602(24), MCA, which establishes a disputable presumption that "[a] letter duly directed and mailed was received in the regular course of the mail." He did not raise a constitutional challenge to this statute before the District Court. We generally will not address either an issue raised for the first time on appeal or a party's change in legal theory. *Tai Tam, LLC v. Missoula Cty.*, 2022 MT 229, ¶ 21, 410 Mont. 465, 520 P.3d 312. We follow this general rule because it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. *Gateway Hosp. Grp. Inc. v. Phila. Indem. Ins. Co.*, 2020 MT 125, ¶ 15, 400 Mont. 80, 464 P.3d 44. By not raising the issue before the District Court, O'Neil has waived it on appeal and we decline to address his challenge to § 26-1-602(24), MCA.

¶3     Mary died on May 16, 2016, leaving her two children as the heirs to her estate: Mark and Jean Fox (Jean). In 2018, Mark hired O'Neil, an "independent paralegal" who is not licensed to practice law in Montana, to probate the estates of both Mary and Douglas Eugene Fox (Douglas), who died in 2009. Mark believed Jean had embezzled funds from both Douglas's estate and Mary while Jean was serving as Mary's caretaker from 2013 until Mary's death.[2] On May 4, 2018, Mark and O'Neil filed an Application for Informal Probate of Will and For Appointment of Personal Representative, contemporaneously with Mark's renunciation of his right to serve as PR and nomination of O'Neil to act as PR for Mary's estate in Cause No. DP-18-117(C).[3] The Clerk of Court issued an Order of Informal Probate of Will and Appointment of Personal Representative and issued Letters of Appointment to O'Neil that same day. Though he was appointed on May 4, O'Neil did not send the required Notice and Information to Jean, an heir and devisee of Mary's estate, until August 20, 2018. On July 13, 2020, with no further action occurring in the probate matter, the District Court issued an Order to Show Cause. At the show cause hearing, O'Neil requested, and received, an extension to complete the accounting of the estate. On October 16, 2020, Mark died. On October 30, 2020, O'Neil filed an Application for Informal Probate of Estate and for Appointment of Personal Representative in Cause No.

---

[2] It is unknown from the record on appeal whether a probate of Douglas's estate was ever opened. Regardless, Douglas's estate is not at issue in this appeal and we need not address it further.

[3] According to the District Court record, Mary's Will was not filed with the Application.

3

DP-20-323(A), along with Jean's renunciation of her right to serve as PR and nomination of O'Neil to act as PR for Mark's estate.

¶4      On August 10, 2021, Jean filed a Motion to Terminate and Remove Personal Representative in Mary's estate. Jean asserted the removal of O'Neil as PR would be in the best interest of the estate because O'Neil "grossly mismanaged the estate and [has] been the cause of irrevocabl[e] harm to it." On September 13, 2021, after receiving no response from O'Neil to her motion to terminate, Jean filed a Motion for Summary Ruling. O'Neil then filed a Response to Motion to Terminate and Remove Personal Representative on September 15, 2021, asserting he did not receive the motion to terminate, but stating he was "quite willing to step down as personal representative" of both Mary's and Mark's estates. O'Neil's response also included a list of debts of the two estates, which included, among other things, a bill for his services in the amount of $19,354.78 as of February 17, 2021. After Jean filed a reply brief, the District Court issued its Order on Heir Jean Fox's Motion to Terminate and Remove the Personal Representative on September 29, 2021. The court's order, citing to *Baldwin v. Bd. of Chiropractors*, 2003 MT 306, ¶ 15, 318 Mont. 188, 79 P.3d 810, noted that O'Neil's claim he did not receive Jean's motion to terminate, without additional evidence of nonreceipt, was insufficient to overcome the disputable presumption of § 26-1-602(24), MCA, that a letter duly directed and mailed was received in the regular course of mail. Pursuant to § 72-3-526(1), MCA, the court set a hearing on Jean's petition to terminate O'Neil as PR for October 27, 2021, and ordered that O'Neil could not act "except to account, to correct maladministration, or preserve the estate."

4

¶5 The court vacated the hearing on October 27, 2021, as no party was present. On October 27, 2021, O'Neil filed a Brief on Motion to Terminate and Remove Personal Rep[resentative], again asserting he did not receive the motion to terminate. O'Neil's brief "move[d] to close the probate" and suggested he would submit a final accounting within 30 days. On October 28, 2021, Jean filed a Motion for New Hearing on her motion to terminate, asserting she erroneously calendared the hearing for October 28 instead of October 27. The District Court thereafter set a hearing on the motion to terminate for December 1, 2021.

¶6 At the hearing on the motion to terminate, the District Court heard testimony from Jean, O'Neil, and Heather Snedigar. The court informed O'Neil that the hearing was regarding whether or not he should be removed for cause, and that if he were removed for cause, the court would not allow him to collect fees for his services. Jean presented a copy of Mary's Will, which the court admitted into evidence. Jean testified that O'Neil had mismanaged the estates of both Mary and Mark, noting that, under the terms of Mary's Will, Mary's estate should have been put into a trust and Jean should have been allowed to live in Mary's house for five years after Mary died. Instead, Mark locked Jean out of the house in January of 2017. After being appointed PR of Mary's estate, O'Neil did not act to allow Jean to live in the house, and in the meantime, Mark destroyed the kitchen. Jean also noted the house had an unpaid tax lien and the water, gas, and electricity had all been shut off numerous times over the last few years. Jean testified that O'Neil had been "predatory in taking what little assets I have of my family home left." O'Neil testified that

5

Mark had hired him because Mark was sure Jean was embezzling from Mary while she was alive and he had "reason to audit" the accounts. O'Neil testified to hiring bookkeepers to help with the accounting of the estate. He further testified that he did not act to allow Jean to live in the home pursuant to the terms of Mary's Will because he was investigating Mark's embezzlement claims and "part of the resolution may have been to leave [Mark] in the home." Snedigar testified she and her husband occasionally live in the house while cleaning and making repairs to it. In closing, O'Neil noted he wanted the estate closed and to no longer be the personal representative, but he believed the estate owed him over $13,000.

¶7 On December 3, 2021, the District Court issued its Findings of Fact, Conclusions of Law, and Order on Heir Jean Fox's Motion to Terminate and Remove the Personal Representative for Cause. The court concluded that, as personal representative of Mary's estate, "O'Neil mismanaged the estate, failed to preserve estate assets, and failed to perform basic duties of the office such as filing the Will, implementing the Will's directives, creating and filing an inventory, and paying taxes on estate property. These acts of misconduct extended to the very beginning of his appointment as personal representative." The court concluded Jean met her burden of proving valid grounds for removal because O'Neil "thwarted the underlying purpose of probate to promote efficiency in liquidation and distribution," and found Jean's allegation O'Neil "presided over the significant dissipation of estate assets and foiled efforts to try and close the estate" to be

6

"essentially unchallenged." The court ordered that O'Neil was not entitled to compensation due to "his gross maladministration of the estate of Mary Jo Fox."

¶8 On January 26, 2022, Jean filed a Motion to Terminate and Remove Personal Representative; Motion for Joinder; and Brief in Support in Mark's estate. Jean noted O'Neil was removed as PR of Mary's estate for "gross maladministration," but the court's order did not address Mark's estate. Jean moved to consolidate both probates into one as all assets of both Mary's and Mark's estates had been intermingled and Jean was the sole heir to both estates. Jean further requested the court remove O'Neil as PR of Mark's estate for cause.

¶9 On February 3, 2022, after twice being rejected by the Clerk of Court for failing to comply with filing requirements, O'Neil filed a Motion to Alter or Amend the Judgment in Mary's estate, asserting he had good cause to disregard Mary's Will and allow Mark to continue living in the house while searching for evidence of embezzlement and that the District Court should have continued the December 1, 2021 hearing on the motion to terminate due to the unavailability of his bookkeeper. O'Neil also attached a document prepared by his bookkeeper in response to the court's December 3, 2021 Findings of Fact, Conclusions of Law, and Order on Heir Jean Fox's Motion to Terminate and Remove the Personal Representative for Cause. Jean filed a response brief on February 18, 2022, asserting O'Neil's motion to alter or amend was frivolous and filed too late.

¶10 On March 3, 2022, the District Court, in Mark's estate, noting there was no objection filed by O'Neil, issued an order removing O'Neil as personal representative and

7

consolidating Mark's probate with Mary's probate. On March 31, 2022, O'Neil filed a Motion to Reconsider and Restore Personal Representative. O'Neil claimed he did not receive Jean's January 26, 2022 Motion to Terminate and Remove Personal Representative; Motion for Joinder; and Brief in Support. O'Neil again put forth reasons why he did not evict Mark from the house, believed he needed to conduct an investigation into Jean's alleged embezzlement, and disregarded Mary's Will's directive to allow Jean to live in the house. O'Neil further noted he had personally paid for numerous things since the estate ran out of money. O'Neil requested his reinstatement as PR for the estates of both Mary and Mark. Jean filed a response brief on April 12, 2022, asserting O'Neil's motion to reconsider was frivolous and an attempt to harass and intimidate her, alleging O'Neil requested $10,000 in exchange for stopping filing motions and claims. O'Neil filed a reply brief on April 26, 2022, in which he "readily admit[ted]" to the $10,000 offer, which he asserted was an attempt to settle the matter "amicably and fairly, NOT an effort in extortion." On June 16, 2022, O'Neil filed a Motion to Clarify and Supplement Motion for Reconsideration, again asserting he had a duty to conduct an audit and prevent Jean from moving into the house as directed in Mary's Will. O'Neil also noted he was paying to continue storing assets of the Fox estates at a commercial storage facility. Jean filed a response on June 21, 2022, noting that O'Neil's motions for reconsideration were filed too late, had only served to harass her, and that O'Neil was holding estate assets hostage while seeking a reward for their return.

8

¶11 The District Court did not rule on either of O'Neil's motions for relief (or issue an extension of time for ruling) and both were deemed denied by the operation of law after 60 days. M. R. Civ. P. 59(f). O'Neil appeals. We restate the issues on appeal as follows: (1) whether the District Court abused its discretion by terminating O'Neil as PR and (2) whether the District Court abused its discretion by denying O'Neil additional funds.

¶12 We review a district court's denial of an M. R. Civ. P. 59(e) motion to alter or amend for an abuse of discretion. *Folsom v. Mont. Pub. Emps. Ass'n*, 2017 MT 204, ¶ 59, 388 Mont. 307, 400 P.3d 706 (citing *Bevacqua v. Union Pac. R.R. Co.*, 1998 MT 120, ¶ 36, 289 Mont. 36, 960 P.2d 273). A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 27, 304 Mont. 356, 22 P.3d 631.

¶13 As a preliminary matter, we note that O'Neil's motion to alter or amend the District Court's December 3, 2021 Order needed to be made within 28 days of that order. M. R. Civ. P. 59(e). O'Neil's February 3, 2022 motion to alter or amend was not made within 28 days of that order and was therefore untimely. O'Neil's March 31, 2022 Motion to Reconsider and Restore Personal Representative was, however, made within 28 days of the court's March 3, 2022 Order which removed O'Neil as PR of Mark's estate for cause and consolidated both probates. Faced with both an untimely and a timely Rule 59 motion, we note that an untimely Rule 59 motion may be considered as a motion under Rule 60 when it states grounds for relief under Rule 60. *Ring v. Hoselton*, 197 Mont. 414, 424, 643 P.2d

1165, 1171 (1982). Though it did not specifically mention Rule 60, O'Neil's untimely motion to alter or amend did assert he never received the motion to terminate and implied it was due to Jean's fraud, which would be a ground for relief under M. R. Civ. P. 60(b)(3). "While pro se litigants may be given a certain amount of latitude, that latitude cannot be so wide as to prejudice the other party, and it is reasonable to expect all litigants, including those acting pro se, to adhere to procedural rules." *Greenup v. Russell*, 2000 MT 154, ¶ 15, 300 Mont. 136, 3 P.3d 124. Here, based on our conclusion the District Court properly terminated O'Neil as PR of both estates and denied him compensation in this matter, there is no prejudice to Jean by addressing the merits of O'Neil's pro se motions.

¶14 "[A] Rule 59 motion may not be used to relitigate old matters, present the case under new theories, raise arguments which could have been raised prior to judgment, or give a litigant 'a second bite at the apple.'" *In re Marriage of Johnson*, 2011 MT 255, ¶ 16, 362 Mont. 236, 262 P.3d 1105 (quoting *Hi-Tech Motors, Inc. v. Bombardier Motor Corp. of Am.*, 2005 MT 187, ¶ 34, 328 Mont. 66, 117 P.3d 159). It is apparent from the record both of O'Neil's Rule 59 motions (and his motion to "clarify") are nothing more than attempts to relitigate old matters and present arguments he could have made earlier. The District Court's deemed denial of his deficient motions properly denied O'Neil "a second bite at the apple." *Hi-Tech Motors*, ¶ 34.

¶15 Turning now to the underlying merits of the District Court's orders, we first address the removal of O'Neil as personal representative of both Mary's and Mark's estates. We review a district court's decision to remove an estate's personal representative to determine

whether the court abused its discretion. *In re Estate of Hannum*, 2012 MT 171, ¶ 18, 366 Mont. 1, 285 P.3d 463 (citing *In re Estate of Anderson-Feeley*, 2007 MT 354, ¶ 6, 340 Mont. 352, 174 P.3d 512). The district court has "broad discretion to remove a personal representative provided the grounds for removal are valid and supported by the record." *In re Estate of Greenheck*, 2001 MT 114, ¶ 19, 305 Mont. 308, 27 P.3d 42.

¶16    A district court may remove a personal representative "for cause" at any time. Section 72-3-526(1), MCA. Cause for removal exists, among other reasons, "when removal would be in the best interests of the estate" or when a personal representative "has mismanaged the estate or failed to perform any duty pertaining to the office." Section 72-3-526(2), MCA. The "breach of a single duty is sufficient to justify removal for cause." *In re Estate of Hannum*, ¶ 27. Here, the grounds for removing O'Neil as personal representative of the estates of Mary and Mark are absolutely "valid and supported by the record." *In re Estate of Greenheck*, ¶ 19. O'Neil failed to perform multiple duties as personal representative. He did not file Mary's Will; did not implement the Will's directive that Jean live in Mary's house, choosing instead to leave Mark in the home while he conducted an audit and investigation into Jean himself; did not serve Jean with the required notice and information within 30 days of his appointment as required by § 72-3-603, MCA; did not create and file an inventory; failed to pay bills on the house, leading to utilities being repeatedly disconnected; and failed to pay taxes on the house, leading to an outstanding tax lien. O'Neil's removal as personal representative was clearly both justified and necessary in this case as he grossly mismanaged the estates, failed to perform his

11

statutory duties, and ignored the directive of Mary's Will based on his own whims. The District Court did not abuse its discretion by removing O'Neil as personal representative.

¶17 The second issue we address is whether the District Court abused its discretion by denying O'Neil compensation for his work as personal representative. "The review of fees paid or taken by a personal representative is left to the sound discretion of the [d]istrict [c]ourt. We will not overturn that decision absent a showing of abuse of discretion, and the court's findings of fact will be upheld unless clearly erroneous." *In re Estate of Stone*, 236 Mont. 1, 4, 768 P.2d 334, 336 (1989) (citations omitted). "[W]hen a personal representative's negligence causes harm to the estate, he or she may be deprived of all or part of their fee." *In re Estate of Stone*, 236 Mont. at 5, 768 P.2d at 336 (citing *In re Estate of Thacker*, 358 N.W.2d 342, 347 (Mich. App. 1984)).

¶18 The District Court determined O'Neil was "entitled to no remuneration for his gross maladministration" in this case. Nevertheless, on appeal, O'Neil is now seeking to have this Court "give [him] a lien on the house," which he could foreclose on if Jean did not pay him "what is owed" within six months. We have already addressed the litany of reasons O'Neil was properly terminated for cause as personal representative. "A crucial factor for determining the reasonableness of any challenged fee is whether the services rendered were beneficial to the estate." *In re Estate of Stone*, 236 Mont. at 4, 768 P.2d at 336 (citing *In re Estates of Kjorvestad*, 287 N.W.2d 465, 467 (N.D. 1980)). The record shows that O'Neil's services were not beneficial, and were in fact detrimental, to the estate. O'Neil ignored the clear directives of Mary's Will while appointing himself as an ersatz private

12

investigator and entirely failed to perform his statutory duties, all the while charging the estate $135 per hour for his "services."[4] Jean, the sole heir to both estates, was forced to enter into legal proceedings to remove O'Neil, who was both denying her from receiving her inheritance and charging her, via the estate, for the pleasure of doing so. As the District Court stated at the termination hearing, O'Neil "held [the] estate hostage" while running up his own fees and utterly failing in his responsibilities as personal representative. O'Neil's failures began on the very first day of his tenure, by failing to file Mary's Will with the application for probate, and continued straight through until his removal. By the time O'Neil was ultimately removed as personal representative, the only real asset of the estates—the house—had been partially destroyed and was subject to an unpaid tax lien. Under the facts of this case, and recognizing the harm he caused to the estates, the District Court properly denied O'Neil any compensation. *In re Estate of Stone*, 236 Mont. at 5, 768 P.2d at 336. The court's decision was not an abuse of discretion.

¶19 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

---

[4] O'Neil charged the estate thousands of dollars in "Legal Fees" for things ranging from "identify[ing a] storage unit" and "go[ing] to [the] store" to responding to Jean's motion to terminate. In one instance, O'Neil charged the estate for 2.5 hours of work at $135 per hour to create Jean's renunciation and nomination in Mark's probate—a one sentence document identical to that created for Mark in Mary's probate with Jean's name substituted for Mark and Mark's name substituted for Mary. Once again, O'Neil is not an attorney licensed to practice law in Montana.

¶20    Affirmed.

/S/ INGRID GUSTAFSON


We concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE