No. 02-348

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 92

IN RE THE ESTATE OF

CHARLES KURALT,

        Deceased.

APPEAL FROM:    District Court of the Fifth Judicial District,
                       In and for the County of Madison, Cause No. DP-29-1997-3609
                       Honorable Loren Tucker, Judge Presiding

COUNSEL OF RECORD:

        For Appellants:

                Gary W. Bjelland and John D. Stephenson, Jardine, Stephenson,
                Blewett and Weaver, Great Falls, Montana

        For Respondent:

                James H. Goetz, Goetz, Gallik, Baldwin & Dolan, Bozeman, Montana

Submitted on Briefs:   September 5, 2002

Decided:   April 21, 2003

Filed:

_____
                       Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellants, Susan Bowers and Lisa Bowers White (Bowers and White), the daughters of Charles Kuralt and personal representatives of the Estate of Charles Kuralt (the Estate), appeal from the decision of the Fifth Judicial District Court, Madison County, ordering that all estate taxes due as a result of the administration of the estate of Charles Kuralt be imposed on the residual estate. We affirm.

¶2 We address the following issue on appeal:

¶3 **Did the District Court correctly apply New York law to the Kuralt codicil when it ordered that the taxes on the property conveyed therein shall be imposed on the residual estate?**

*PROCEDURAL BACKGROUND*

¶4 This is the fourth appeal to come before this Court in the Matter of the Estate of Charles Kuralt and most of the relevant facts were previously before this Court. *See In re Estate of Kuralt (Kuralt I)*, 1999 MT 111, 294 Mont. 354, 981 P.2d 771; *Estate of Kuralt (Kuralt II)*, 2000 MT 359, 303 Mont. 335, 15 P.3d 931; and *Estate of Kuralt (Kuralt III)*, 2001 MT 153, 306 Mont. 73, 30 P.3d 345. We review only the relevant procedural history to make a determination of the issue herein on appeal.

¶5 Charles Kuralt died testate in a hospital in New York City on July 4, 1997. While the bulk of his estate was in New York, he also owned property in Madison County, Montana, on the Big Hole River. Mr. Kuralt's widow, Suzanna "Petie" Baird Kuralt, thereafter filed a petition in a New York state court seeking to probate the estate. On September 15, 1997, Petie, as the Domiciliary Foreign Personal Representative of the Estate of Charles Kuralt,

2

through Montana counsel, filed a Proof of Authority seeking to probate the real property owned by Kuralt in Madison County.

¶6     On September 30, 1997, Kuralt's long-time and intimate companion, Patricia Elizabeth Shannon, filed a Petition for Ancillary Probate of Will, challenging the application of Kuralt's New York will to the Madison County property based, in part, on a letter which she had received from Mr. Kuralt shortly before his death–a letter that this Court, in *Kuralt II*, determined to be a valid holographic codicil conveying the Madison County property to Shannon.

¶7     Mr. Kuralt's wife, Petie, was initially appointed as the personal representative of the Estate in both New York and Montana. She died in October 1999, and on February 22, 2000, the Estate filed a Bench Memorandum informing the Court of Petie's death as well as the correspondent termination of her personal representation of the Estate. On July 21, 2000, Bowers and White were appointed as successor personal representatives of the Kuralt Estate in New York and, on August 21, 2000, petitioned the Montana District Court to appoint them successor personal representatives of the Estate in Montana. The District Court denied their request, and we reversed in *Kuralt III*.

¶8     Left undetermined in the previous cases was the question of whether the Estate or Shannon was responsible for the estate taxes associated with the bequest to Shannon of the Big Hole River property in Madison County. As a consequence of this Court's decision in *Kuralt II* concluding that Kuralt's 1997 letter was a valid holographic codicil conveying the

3

Big Hole River property to Shannon, there exists a federal estate tax obligation in regard to the property.

¶9 On January 4, 2001, Shannon filed and served a "Demand upon Estate of Suzanna Baird Kuralt for Payment of Taxes" demanding that the co-personal representatives, Bowers and White, pay from the residuary of the Estate all federal, state and gift taxes due as a result of the bequest of the Big Hole River property to Shannon.

¶10 Bowers and White opposed Shannon's demand for payment out of the residuary of the Estate and argued that, under both New York and Montana law, estate taxes should be apportioned under the New York apportionment statutes, notwithstanding language to the contrary in Kuralt's 1994 will. They contended that the conveyance of the property to Shannon created adverse tax consequences against the Estate, contrary to the "dominant purpose or plan of distribution" of the 1994 will to take full advantage of the marital deduction and to protect Mrs. Kuralt from burdensome taxation.

¶11 Shannon responded that, under the applicable New York statutory and case law as well as Montana law, where the language of the will makes it clear that there is to be no apportionment of estate taxes according to state statute, the courts of both states will abide by the explicit language in the will.

¶12 The District Court agreed with Shannon and concluded that, under substantially similar laws of New York and Montana, the court must adhere and give effect to the testator's plan if such plan can be ascertained. The District Court further concluded that, under Article Twelve of Kuralt's 1994 will, wherein it states that all death taxes "shall be

4

paid without apportionment," all taxes are to be paid by the residual estate and thus ordered that the taxes generated from the bequest of the Big Hole River property to Shannon be paid accordingly.

¶13    Bowers and White now appeal the District Court's decision.

¶14    **Did the District Court correctly apply New York law to the Kuralt codicil when it ordered that the taxes on the property conveyed therein shall be imposed on the residual estate?**

*STANDARD OF REVIEW*

¶15    The issue before this Court is a question of law. When reviewing a district court's conclusions of law, we determine whether the court's interpretation of the law is correct. *In re Estate of Ober*, 2003 MT 7, ¶ 7, 314 Mont. 20, ¶ 7, 62 P.3d 1114, ¶ 7; *Matter of Estate of Alcorn* (1994), 263 Mont. 353, 355, 868 P.2d 629, 630.

*DISCUSSION*

¶16    Initially we note that Charles Kuralt was domiciled in New York at the time of his death and that his 1994 will was executed in New York and was admitted to probate there. This Court determined in *Kuralt II* that Kuralt's 1997 letter to Shannon was a valid holographic codicil to the 1994 will, and thus, a part of the 1994 will. Under these circumstances, Bowers, White and Shannon agree and have stipulated that New York law applies to the construction of the will as well as the codicil. Furthermore, Montana law is essentially the same on the points at issue in this case.

¶17    On appeal, Bowers and White argue that the District Court should be reversed because its decision that the estate taxes attributable to the Big Hole River property is

5

chargeable against the residuary is contrary to Kuralt's "purpose or plan" as expressed in his 1994 will and contrary to the well established New York statutory law and public policy.

¶18    The applicable New York statute provides:

> Unless otherwise provided in the will or non-testamentary instrument, and subject to paragraph (d-1) of this section: (1) The tax shall be apportioned among the persons benefited in the proportion that the value of the property or interest received by each person benefited bears to the total value of the property and interest received by all persons benefited . . . .

EPTL § 2-1.8(c). When interpreting the earliest version of this statute, the Court of Appeals of New York stated that the statute "requires apportionment of Federal and State estate taxes among the legatees and devisees 'in the proportion that the value of the property or interest received by each such person' . . . *except where the testator 'otherwise directs in his will.'*" *In the Matter of the Will of Shubert* (1962), 10 N.Y.2d 461, 467, 180 N.E.2d 410, 412 (emphasis supplied).

¶19    This holding was affirmed by the Supreme Court, Appellate Division of New York in *In the Matter of the Estate of Dewar* (1978), 404 N.Y.S.2d 750, 62 A.D.2d 352.   In *Dewar*, the decedent's last will and testament, dated December 4, 1972, provided:

> I direct that all my just debts and funeral and administration expenses be paid. I further direct that all inheritance, estate, transfer, succession and death taxes imposed by any jurisdiction upon property passing under this, my Will, be paid out of the general estate as expenses of the administration thereof, *without apportionment* as to any legatee.

*Dewar*, 404 N.Y.S.2d at 752, 62 A.D.2d at 353 (emphasis supplied).  The will in *Dewar* clearly provided that all estate  taxes imposed upon property passing under the will be paid

6

out of the residual estate and "without apportionment" as to any legatee. The remainder of the will made bequests to individuals and charities and left the residuary to five charities.

¶20 However, in a later codicil dated June 22, 1973, the decedent increased the amount of some bequests to certain individuals previously named in her will, and further provided:

> In all other respects, I hereby ratify and confirm the provisions of my Last Will and Testament dated December 4, 1972.

*Dewar*, 404 N.Y.S.2d at 752, 62 A.D.2d at 354. With the increase of the bequests in the codicil, it was later determined that the estate and transfer taxes would consume all of the residuary, requiring abatement of pre-residuary bequests. The residuary legatees thereafter commenced proceedings in the New York Surrogate Court to determine whether the gifts bequeathed in the codicil should receive the same tax treatment as the gifts contained in the 1972 will. *Dewar*, 404 N.Y.S.2d at 752, 62 A.D.2d at 354.

¶21 The Surrogate determined that the gifts in the codicil should receive the same tax treatment as the gifts in the 1972 will and the Supreme Court, Appellate Division, affirmed, concluding that "[e]state taxes are apportioned among recipients of estate assets 'unless otherwise provided in the will or non-testamentary instrument' and such a contrary direction must be clear and unambiguous. Here there is no question but that the direction to avoid apportionment against the legatees named in the will is both clear and unambiguous and, indeed, it is undisputed that such was the intention of the testatrix." *Dewar*, 404 N.Y.S.2d at 752, 62 A.D.2d at 354 (citing *Matter of Pepper* (1954), 307 N.Y. 242, 251, 120 N.E.2d 807, 811).

7

¶22    In *Dewar*, the appellant argued that, because the codicil contained only general language in ratifying the terms of the will without expressing specific intent that the additional gifts be exonerated from statutory apportionment, pursuant to the apportionment statute, EPTL 2-1.8, the estate and transfer taxes generated by the codicil should be apportioned according to the specific property generating the tax.  The Court of Appeals disagreed, and, citing to *Matter of Nicholas* (1973), 33 N.Y.2d 174, 305 N.E.2d 911, stated: "Since a will and a codicil must be construed together, where the provisions of the will contain a tax exoneration clause broad enough to encompass all testamentary dispositions, the clause also applies to gifts contained in the codicil in the absence of a manifest intent to the contrary . . . ."  *Dewar*, 404 N.Y.S.2d at 752-53, 62 A.D.2d at 355 (citation omitted).

¶23    Bowers and White contend that the rule in *Dewar* is inapplicable to the current case because Kuralt's 1994 will did contain a "manifest intent to the contrary," that intent being Kuralt's intent to take full advantage of the marital deduction, thus ensuring that Mrs. Kuralt's share would be tax free.  They argue that the Surrogate's conclusion, and the Court of Appeal's affirmation in *Dewar*, was not only consistent with the anti-apportionment clause in the will, but was also consistent with the undisputed intention of the testatrix in *Dewar* to opt out of the apportionment statute.

¶24    Bowers and White contend that, in the instant case, it is likewise undisputed that Kuralt's "dominant purpose or plan of distribution" was to insure that Mrs. Kuralt's share would be tax free, and that this dominant purpose is inconsistent with the tax burden now generated by the bequest in the codicil of the Big Hole River property to Shannon.  They

8

contend that this inconsistency generates an ambiguity such that there is no clear and unambiguous direction that the taxes generated from the Big Hole Property should not be apportioned to its recipient, and that such taxes should, therefore, be paid by Shannon, notwithstanding the language in Article Twelve of Kuralt's 1994 will. Article Twelve provides:

> A. All estate, inheritance . . . and other death taxes . . . which shall be imposed by reason of my death . . . *shall be paid without apportionment* in the following manner:
> (a) first, out of that portion, if any, of the balance of my residuary estate disposed of under Paragraph B of Article FIVE of this Will with respect to which my wife shall have made a qualified disclaimer;
> (b) second, out of the fractional share, if any, of my residuary estate disposed of under Paragraph A of Article FIVE of this Will; and
> (c) third, out of (the balance of) my residuary estate disposed of under . . . Article FIVE of this Will . . .
> B. Notwithstanding the provisions of Paragraph A of this Article TWELVE, the proceeds of any life insurance policies on my life or of any pension, profit sharing or other employee benefit plan or individual retirement plan, which shall be included in my gross estate for estate tax purposes but are payable to a beneficiary or beneficiaries other than my wife or my Executors or Trustees under this Will, shall bear, in the manner provided by law, their apportioned share of all taxes . . . and such apportioned share and amount shall be paid by the persons in possession of such property or benefited thereby. [Emphasis supplied.]

¶25 While Bowers and White agree that Article Twelve presents a clear and unambiguous direction that taxes should not be apportioned among the recipients of the Estate, thus opting out of the default apportionment provision of EPTL § 2-1.8(c), they also contend that, pursuant to *Matter of Fabrini* (1957), 2 N.Y.2d 236, 240, 140 N.E.2d 269, 271, where a reading of the entire will reveals a "dominant purpose or plan of distribution," the individual parts must be interpreted in light of that purpose, and be given effect accordingly, despite

9

the fact that a literal reading might yield an inconsistent meaning. In other words, they argue

that Kuralt's holographic codicil renders ambiguous the otherwise clear language of the will,

and that, in light of this ambiguity, there exists a conflict between the dominant purpose of

the will and the anti-apportionment language of Article Twelve.

¶26    Thus, they argue that the alleged ambiguity created by the holographic codicil

requires this Court to look to the overall scheme of the will, and that, pursuant to *Matter of*

*Pepper* (1954), 307 N.Y. 242, 251, 120 N.E.2d 807, 811, and given the strong policy in

favor of statutory apportionment, any ambiguity in the testator's intent must be resolved in

favor of the EPTL apportionment scheme, thus requiring Shannon to pay the estate taxes

generated by the Big Hole River property.

¶27    In *Matter of Pepper*, the testator's will first directed that all bequests and trusts in the

will be set up free of tax and then directed that the trusts be created out of the residuary

estate. However, the will went on to direct that all taxes be paid from the same residuary

estate out of which the trusts were to be created, thus placing a tax on the trusts. *Matter of*

*Pepper*, 307 N.Y. at 249-50, 120 N.E.2d at 810-11.

> If the latter direction be followed, viz., that the taxes be paid out of the
> residuary estate, the result is that the trusts created are not set up freed of taxes
> as he directed in the opening portion of paragraph Third, but are set up each
> having borne a share of the taxes. If the early direction be followed, viz., that
> the trusts be set up freed from all deduction for inheritance, transfer, estate or
> any other tax, then the direction that the taxes be paid out of the residuary
> estate is meaningless for the property going into the trusts comprises the entire
> residuary estate and after the trusts are set up freed from taxes no residuary
> remains from which taxes can be paid. The first clause directing the trusts to
> be set up free of tax and the last clause directing all taxes to be paid out of the
> residuary estate cancel out or neutralize each other. *The net result is that this*
> *will does not contain a direction against statutory apportionment*.

10

*Pepper*, 307 N.Y. at 250, 120 N.E.2d at 811. Absent a clear and unambiguous direction against statutory apportionment, combined with a strong policy favoring apportionment with the burden of proof being on the party contending against apportionment, the *Pepper* Court concluded that, "[i]n case of doubt as to what the will means on the subject of taxes the statutory direction to apportion is absolute." *Pepper*, 307 N.Y. at 251, 120 N.E.2d at 811.

¶28    Shannon argues that *Matter of Pepper* in not applicable to Kuralt's will, as *Matter of Pepper* involved the interpretation of an internal conflict within the will and did not involve a later codicil. Shannon also notes that *Dewar* was decided after *Matter of Pepper*, and that the *Dewar* Court, in fact, cited to *Matter of Pepper* yet held that, where anti-apportionment language of the will is unequivocal, it must be faithfully followed by the courts and that a codicil must be construed in conformance with the will unless the codicil contains a clear contrary direction. Shannon argues that the instant case is identical or nearly identical to *Dewar* because the Kuralt will contains an unambiguous directive against apportionment of estate taxes, and like *Dewar*, involves a codicil that did not direct otherwise.

¶29    Bowers and White also rely on the United States District Court case of *United States v. Noonan* (N. Dist. NY 1979), 43 A.F.T.R.2d 79-1280, 79-1 USTC ¶ 13,280. *Noonan*, like *Matter of Pepper*, involved an internal inconsistency, wherein the decedent's will first created a marital trust from a fraction of the residuary, included language in Article Fifth directing that the widow's trust "will always be in the exact amount of the maximum marital deduction," and additionally directed in Article Eighth that all taxes "shall be paid entirely out of my general Estate as part of the expense of the administration thereof, with no right

11

of reimbursement from *any* recipient or beneficiary of any such property." *Noonan* (emphasis supplied).

¶30    The parties agreed that the latter language, "shall be paid entirely out of my general Estate," meant out of the "residuary." The defendant additionally argued that the direction that taxes be paid out of "my general Estate," coupled with the inclusion that they should be paid "as part of the expense of the administration," was sufficient under *Matter of Pepper* and *Riggs v. DelDrago* (1942), 317 U.S. 95, 63 S.Ct. 109, 8 L.Ed. 106, to constitute a clear and unambiguous direction against statutory apportionment.

¶31    The *Noonan* Court agreed that a direction to pay taxes as an administration expense *can* be a direction against statutory apportionment, but such language is not, by itself, a clear and unambiguous direction against statutory apportionment, but must be considered in the context of the entire will. *Noonan* (citations omitted). In view of the entire will, the *Noonan* Court stated that, "[e]ven construing the language of ARTICLE EIGHTH and the definition of the residuary in ARTICLE FIFTH as indicating a direction against statutory apportionment, when such direction is considered in conjunction with the will as a whole, it definitely lacks the clarity of a direction against statutory apportionment that would subject the FIVE A. trust to the payment of taxes." *Noonan*.

> Noonan, like Pepper, directed the payment of taxes out of the residuary as part of the expense of administration "with no right of reimbursement from *any* recipient or beneficiary of such property . . . ." This, like the isolated direction in *Pepper*, would indicate that testator Noonan directed against statutory apportionment. Placing this construction on the will leaves the result urged by defendant, *i.e.*, the FIVE A. trust is diminished substantially below the maximum allowable marital deduction.

12

*Noonan* (emphasis in original).

¶32    The *Noonan* Court concluded that the above "indication" directing against statutory apportionment, combined with the direction by the testator to take full advantage of the marital deduction, created an inconsistency in the will "no less than that disclosed in Pepper's will and commands the same result." *Noonan*.

¶33    Because *Noonan*, like *Matter of Pepper*, contained an internal inconsistency and did not involve a codicil, we find *Noonan* unpersuasive.  Kuralt's will contains clear and unambiguous direction in Article Twelve that estate taxes be paid "without apportionment" out of the residuary.  Such clarity was missing from the decedent's will in *Noonan*. Although Bowers and White claim that *Noonan* stands for the proposition that, where the testator clearly intended take full advantage of the marital deduction, such intent trumps any direction elsewhere in the will that would minimize the marital deduction, *Noonan* does not so hold.  *Noonan* did not contain clear and unambiguous anti-apportionment language such as in *Dewar* and the instant case.  Thus, the *Noonan* Court, like the Court in *Matter of Pepper*, concluded the decedent's will lacked the clarity necessary to rebut the apportionment provision of N.Y. EPTL § 2-1.8.  As we have already noted, under New York law, where there is doubt as to what a will means on the subject of taxes, the direction to apportion is absolute.  *Matter of Pepper*, 307 N.Y. at 251, 120 N.E.2d at 811.  We thus conclude that neither *Noonan* nor *Matter of Pepper* resolve the current dispute.

¶34    N.Y. EPTL § 1-2.1 provides:

13

A codicil is a supplement to a will, either by adding to, taking from or altering its provisions or confirming it in whole or in part by republication, but not totally revoking such will.

"A review of the relevant statutes discloses that EPTL § 1-2.8(b) provides that 'Unless the context otherwise requires, the term "will" includes a "codicil"' . . . . If probate is decreed, the will and the codicil become one instrument constituting the last will of decedent. The law clearly provides that a will includes any and all codicils." *Will of Okin* (N.Y.Sur. 1979), 100 Misc.2d 1020, 1021-22, 420 N.Y.S.2d 464, 465 (citing *Matter of Moore* (N.Y.Sur. 1961), 32 Misc.2d 429, 222 N.Y.S.2d 521).

¶35 "'The effect of a codicil is to republish the will and make it speak again from a new date.' Differently stated by Chief Judge Pound in *Matter of Greenberg's Estate*, 261 N.Y. 474, 185 N.E. 704, 87 A.L.R. 833, 'It may be conceded that the will and the codicils are separate papers, so that one may stand although the other fall, but, when all are admitted to probate as the last will and testament of the testator, the effect of the codicils is to republish the will and make it speak from the new date in so far as it is not altered or revoked by the codicil.'" *In re Baker's Estate* (N.Y.Sur. 1940), 174 Misc. 93, 102, 19 N.Y.S.2d 875, 884 (citation omitted); *see also In re Smith's Estate* (N.Y.Sur. 1937), 165 Misc. 36, 39, 300 N.Y.S. 1057, 1060 ("A codicil is defined to be a written supplement or addition to an already existing will. Its purpose is to change, add to, enlarge or restrict, or annul the provisions of the will to which it refers, or it may revoke the will altogether. It is, in reality, merely a little will").

14

¶36     We disagree with Bowers and White that *Dewar* is distinguishable by virtue of the fact that the codicil in *Dewar* specifically "ratified and confirmed" the provisions of the decedent's previous will. *See Dewar*, 404 N.Y.S.2d at 752, 62 A.D.2d at 354. Under New York law, a valid codicil, by definition, alters and supplements or adds and subtracts from an already existing will, whether or not the codicil contains specific language to that effect. A codicil that is silent on method of payment of estate taxes, therefore, does not add or subtract from clear and unambiguous language in the original will specifically directing how estate taxes should be paid, even if the bequest in the codicil generates a tax burden not previously existing under the original will. Similar to *Dewar*, in the instant case there is no question but that the direction to avoid apportionment against specific devisees in Kuralt's 1994 will is both clear and unambiguous, and that this, indeed, was Kuralt's intention. *See Dewar*, 404 N.Y.S.2d at 752, 62 A.D.2d at 354.

¶37     While there is a strong public policy in favor of statutory apportionment under New York law, we hold that the District Court correctly concluded that Shannon satisfied the burden of proving that Kuralt's will directs, clearly and unambiguously, in Article Twelve, against statutory apportionment, and that all estate taxes are to be paid by the residual Estate, including those generated by the bequest of the Big Hole River property to Shannon.

¶38     The decision of the District Court is affirmed accordingly.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER

15

/S/ TERRY N. TRIEWEILER
/S/ W. WILLIAM LEAPHART