FILED

05/02/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0206

DA 22-0206

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 72

IN THE MATTER OF THE ESTATE OF

GERRY WILLIAMS, same person as
GERALD MARCUS WILLIAMS, same
person as GERRY M. WILLIAMS,

     Deceased.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
                      In and For the County of Phillips, Cause No. DP-2020-18
                      Honorable Yvonne Laird, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                William M. Solem, Burns Solem & MacKenzie, Chinook, Montana

                Dylan McFarland, Knight Nicastro MacKay, LLC, Missoula, Montana

                Rachel H. Parkin, Milodragovich, Dale & Steinbrenner, P.C., Missoula, Montana

        For Appellee:

                John R. Christensen, Joseph L. Breitenbach, Christensen, Fulton & Fliz, PLLC, Billings, Montana

                Oliver J. Urick, Urick Law Firm, PLLC, Stanford, Montana

                        Submitted on Briefs:  November 16, 2022

                                      Decided:  May 2, 2023

Filed:

                                      _____
                                               Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Vicki Hofeldt (Vicki) appeals from the March 24, 2022 Findings of Fact, Conclusions of Law, and Order of Formal Probate, Order Removing Personal Representative, and Order Appointing Special Administrator issued by the Seventeenth Judicial District Court, Phillips County. The District Court's order granted petitions made by Lorri Williams (Lorri) to formally probate the estate of her ex-husband Gerry Williams (Gerry) and to remove Vicki as Personal Representative of Gerry's estate.

¶2 We restate the issues on appeal as follows:

*1. Whether the District Court, sitting in probate, lacked jurisdiction to interpret the Marital Property Settlement Agreement.*

*2. Whether the District Court erred in its interpretation of the Marital Property Settlement Agreement.*

*3. Whether the District Court abused its discretion by removing Vicki as Personal Representative.*

*4. Whether the District Court abused its discretion by disallowing Vicki's attorney fees beyond those required to file the documents necessary to open the probate.*

¶3 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Gerry and Lorri were married in 1978. Throughout their marriage, Gerry and Lorri acquired a significant amount of real estate and other property as they developed a large ranch in Phillips County. They also became the sole shareholders and operators of the Williams Land and Cattle Company (WLCC). Gerry and Lorri had two daughters, Brittany Williams (Brittany) and Vicki, during their marriage, both of whom are now adults. In

2001, Gerry executed his Last Will andyh Testament. Gerry's Will devised his entire estate to Lorri, and in the event Lorri did not survive him, the estate would pass to Brittany and Vicki in equal shares. Gerry's Will named Lorri as his personal representative, and in the event Lorri did not survive him, Vicki would be his personal representative.

¶5 In early 2020, Gerry and Lorri decided to divorce and Lorri met with a divorce attorney. Gerry and Lorri then decided that Lorri would use the law firm the two of them had used since 1984: Bosch, Kuhr, Dugdale & Brown. Brad Dugdale, their attorney, did not do divorces and suggested another attorney at the firm, Jamie Vines, could handle it. Vines informed Gerry that she represented Lorri, not him, in the divorce and that he could seek his own counsel. Gerry did not seek independent counsel, but instead signed a waiver of conflict which stated, in part, that Gerry's "interests are considered directly adverse to Lorri's interests in the dissolution action." Vines met with Lorri individually, as well as with Lorri and Gerry together several times, and ultimately drafted a Stipulated Marital and Property Settlement Agreement (MPSA). Vines went through the MPSA "line by line" with both Gerry and Lorri.

¶6 On July 29, 2020, Gerry and Lorri filed a Joint Petition for Dissolution of Marriage, along with the MPSA which they had signed on July 24, 2020. The MPSA provided for the distribution of Gerry and Lorri's real and personal property. In addition to specific distributions of assets, the MPSA also provided Gerry and Lorri were to "execute documents or deeds sufficient to ensure that joint tenancy with rights of survivorship continue on each and every piece of property which is jointly owned as of the date of

3

dissolution," as well as for "each and every interest in mineral, water or other similar rights," and for the "remainder interest in an estate for years." The MPSA also provided that the $150,000 per year lease payments made by Vicki and her husband under a 2015 lease agreement with option to purchase property owned by WLCC, Gerry, and Lorri would be distributed with $60,000 going to WLCC and the remainder split equally between Gerry and Lorri. As for WLCC itself, the MPSA stated Gerry and Lorri would "each retain their own interests and agree to execute a Shareholder agreement which provides, among other things for equal voting interest and which provides that upon one [party's] death, the other party's Shares shall be ceded to the corporation, without payment, immediately upon death," and that WLCC should conduct a farm auction to sell equipment to satisfy WLCC's debts.

¶7      On July 31, 2020, the Hill County district court issued its Findings of Fact, Conclusions of Law and Entry of Decree of Dissolution. The Decree adopted and incorporated the MPSA and ordered that "[a]ll real and personal property and liabilities are to be divided according to [the MPSA] and the parties are ordered to perform and comply with the terms and conditions contained in the [MPSA]." The deeds to transfer the property into joint tenancy with rights of survivorship were not ready to be signed when the dissolution was finalized.

¶8      After their divorce was finalized, Gerry and Lorri continued to live together and met with a builder to discuss building a new house. On the day they were leaving for a vacation in Idaho, Gerry and Lorri were contacted by Vines's assistant informing them the deeds to

4

transfer the real property into joint tenancy with rights of survivorship were ready to be signed. Gerry and Lorri indicated they would stop by the office and sign the deeds when they returned from their vacation. On September 7, 2020, while on vacation with Lorri in Salmon, Idaho, Gerry died unexpectedly. Lorri paid for Gerry's funeral expenses.

¶9 On October 20, 2020, Lorri contacted Vicki to see if Gerry's probate had been opened. Vicki responded that it had not. On October 21, 2020, Vicki filed an Application for Informal Probate of Will and Appointment of Personal Representative in the Phillips County District Court. Both Gerry and Vicki's divorce decree and the MPSA were attached to Vicki's application for informal probate. Vicki did not provide notice to Lorri. Vicki's application asserted her appointment as Gerry's personal representative was proper because a provision of Montana's revocation upon divorce statute, § 72-2-814(2)(a)(iii), MCA, revoked Gerry's Will's nomination of Lorri to serve as his PR. Lorri ultimately discovered that Gerry's Will was being probated and filed a Notice of Appearance and Demand for Notice on February 4, 2021. WLCC filed the same on February 8, 2021. On February 12, 2021, Lorri filed a Creditor's Claim, claiming $8,885.55 in funeral expenses.

¶10 On February 19, 2021, Lorri, individually and as President of WLCC, filed a Petition for Formal Probate, asserting she should have been identified as an interested person in Vicki's petition for informal probate and that Gerry and Lorri's divorce Decree and MPSA revoked numerous provisions in Gerry's Will. Lorri asserted the Decree was a testamentary instrument which needed to be probated along with the Will. On February 24, 2021, the District Court issued an Order Granting Petition for Formal Probate and Setting

5

Hearing, which granted Lorri's petition for formal probate, ordered Vicki to refrain from exercising the PR's power to make distributions of the estate during the pendency of the formal proceeding, and set a hearing on the petition for formal probate. Vicki filed a declaratory judgment action in the Hill County district court on July 16, 2021. That same day, she also filed a Response to Petition for Formal Probate in the Phillips County District Court. Vicki's response asserted the District Court, sitting in probate, lacked jurisdiction to interpret or enforce the terms of the MPSA. Lorri filed a reply brief on August 2, 2021.

¶11 On September 8, 2021, Lorri filed a Verified Petition for Removal of Personal Representative and for Appointment of a Special Administrator. Lorri asserted several reasons Vicki should be removed as PR and a Special Administrator appointed instead, including failing to give notice, conflicts of interest, and failing to prepare an inventory. Due to the conflict between the parties, Lorri requested a "neutral, uninterested, and unbiased person" be appointed as special administrator of Gerry's estate. On September 15, 2021, the District Court issued an Order which continued the hearings on the Formal Probate Petition and Lorri's petition to remove Vicki as PR until October 27, 2021, to allow the parties time to brief the petition for removal. Vicki filed a response to the petition for removal on September 22, 2021, asserting there was not sufficient cause to remove her as PR. Lorri filed a reply on September 29, 2021.

¶12 On October 27, 2021, the District Court held a combined hearing on the petition for formal probate and the petition to remove Vicki as personal representative of Gerry's estate. At that hearing, the court heard testimony from Mark Handley, with whom Gerry

6

and Lorri had discussed building the new house; Attorney Vines; Lorri; Bill Solem, Vicki's attorney in the probate matter; and Brittany. Attorney Vines testified, in relation to the WLCC provision in the MPSA, that she had made a scrivener's error in the section which stated, "upon one [party's] death, the other party's Shares shall be ceded to the corporation, without payment, immediately upon death," and it should have instead said that the decedent's shares shall be ceded to the corporation upon death, so that whoever remained living would remain the owner of WLCC. At the conclusion of the hearing, the District Court ruled from the bench that it was granting the petition for formal probate, that the PR had the duty to stand in the shoes of Gerry and fulfill the terms of the MPSA, and granted the petition to remove Vicki as PR because it was in the best interests of the estate due to the conflict involved with Vicki disputing the MPSA and standing to gain personally from rejecting the terms of the MPSA. The court determined it would appoint a special administrator, but allowed the parties time to determine if they were OK with the one suggested by the court.

¶13 The District Court issued its Findings of Fact, Conclusions of Law, and Order of Formal Probate, Order Removing Personal Representative, and Order Appointing Special Administrator on March 24, 2022. The court found the terms of the MPSA were binding upon Gerry's PR and it was the PR's responsibility "to stand in the shoes of the decedent and fulfill the terms of the judgment left unfulfilled at the time of Gerry's death"; that Lorri was awarded property as joint tenant with rights of survivorship upon Gerry's passing; that Gerry's shares were ceded to WLCC, making Lorri sole shareholder in the company; and

7

that Vicki "failed to separate her personal desires and opinions" regarding what should have happened from what did happen and was seeking to "advance her own personal interests." The District Court found the conflict between the heirs of Gerry's estate, Vicki and Brittany, and Lorri made it "impossible for the Estate to move forward with Vicki acting as the PR," removed Vicki as PR for cause, and appointed Bruce O. Bekkedahl, an attorney at Patten, Peterman, Bekkedahl & Green, PLLC, in Billings as special administrator of Gerry's estate. The District Court further ordered that Vicki "shall not receive compensation for attorney fees incurred beyond those required to file the documents needed to open the probate on October 21, 2020, and she shall reimburse the estate for all attorney fees paid for by the estate after such period, unless the Special Administrator deems the expenses to be legitimate Estate expenses." Bekkedahl was issued Letters of Special Administration on May 4, 2022.

¶14 Vicki appeals. Additional facts will be discussed as necessary below.

**STANDARD OF REVIEW**

¶15 "Whether a court has subject matter jurisdiction is a question of law that we review for correctness." *In re Estate of Cooney*, 2019 MT 293, ¶ 4, 398 Mont. 166, 454 P.3d 1190 (citing *In re Estate of Haugen*, 2008 MT 304, ¶ 8, 346 Mont. 1, 192 P.3d 1132).

¶16 We review a district court's findings of fact to determine whether they are clearly erroneous. *In re Estate of Kuralt*, 2000 MT 359, ¶ 14, 303 Mont. 335, 15 P.3d 931 (*Kuralt II*). A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if a review

8

of the record leaves us with the definite and firm conviction that a mistake has been made. *Kuralt II*, ¶ 14. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *In re Estate of Kuralt*, 2003 MT 92, ¶ 15, 315 Mont. 177, 68 P.3d 662 (citations omitted) (*Kuralt IV*). An appellant bears the burden of establishing error by the district court. *In re Estate of Lande*, 1999 MT 162, ¶ 30, 295 Mont. 160, 983 P.2d 308, *overruled, in part, on other grounds by In re Estate of Bradshaw*, 2001 MT 92, ¶ 16, 305 Mont. 178, 24 P.3d 211.

¶17 We review a district court's decision to remove an estate's personal representative to determine whether the court abused its discretion. *In re Estate of Hannum*, 2012 MT 171, ¶ 18, 366 Mont. 1, 285 P.3d 463 (citing *In re Estate of Anderson-Feeley*, 2007 MT 354, ¶ 6, 340 Mont. 352, 174 P.3d 512). A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *In re Estate of Hannum*, ¶ 18 (citing *In re Marriage of Everett*, 2012 MT 8, ¶ 11, 363 Mont. 296, 268 P.3d 507).

¶18 "The review of fees paid or taken by a personal representative is left to the sound discretion of the District Court." *In re Estate of Stone*, 236 Mont. 1, 4, 768 P.2d 334, 336 (1989).

## DISCUSSION

¶19 *1. Whether the District Court, sitting in probate, lacked jurisdiction to interpret the Marital Property Settlement Agreement.*

¶20 Vicki asserts the District Court, sitting in probate, did not have jurisdiction to interpret Gerry and Lorri's MPSA. Relying on *In re Estate of Cooney*, Vicki contends the

9

MPSA was not a testamentary instrument over which the District Court had jurisdiction and therefore the court could not interpret and apply the terms of the MPSA in the probate proceeding. Lorri, meanwhile, contends the MPSA meets the statutory definition of a "governing instrument" subject to the District Court's probate jurisdiction. We agree with Lorri that the District Court had jurisdiction to interpret the MPSA in this case.

¶21 The administration of an estate is a special proceeding. *In re Estate of Cooney*, ¶ 7. A district court sitting in probate has the subject matter jurisdiction conferred to it by statute:

> (1) To the full extent permitted by the constitution, the court has jurisdiction over all subject matter relating to:
>
>    (a) estates of decedents, including construction of wills and determination of heirs and successors of decedents, and estates of protected persons; and
>
>    (b) protection of minors and incapacitated persons.
>
> (2) The court has full power to make orders, judgments, and decrees and take all other action necessary and proper to administer justice in the matters which come before it.

Section 72-1-202, MCA. Montana has long held that a "'district court sitting in probate has only the special and limited powers conferred by statute, and has no power to hear and determine any matters other than those which come within the purview of the statute or which are implied as necessary to a complete exercise of those expressly conferred.'" *In*

*re Estate of Haugen*, ¶ 9 (quoting *In re Graff's Estate*, 119 Mont. 311, 316-17, 174 P.2d 216, 218 (1946)).[1]

¶22　Montana has adopted the Uniform Probate Code (UPC), which provides that the "code shall be liberally construed and applied to promote its underlying purposes and policies." Section 72-1-101(2)(a), MCA. One of the underlying purposes and policies of the UPC is to "discover and make effective the intent of a decedent in distribution of the decedent's property[.]" Section 72-1-101(2)(b)(ii), MCA. Ultimately, "Montana courts are guided by the bedrock principle of honoring the intent of the testator." *Kuralt II*, ¶ 17 (collecting cases).

¶23　When filing her application for informal probate, Vicki attached a copy of Gerry and Lorri's divorce Decree and the MPSA. Because Gerry and Lorri divorced prior to Gerry's death, the probate of Gerry's estate is subject to Montana's revocation upon divorce statute:

> Except as to a retirement system established in Title 19 or as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage:

---

[1] It has been noted that Montana is an outlier among states who have adopted the Uniform Probate Code in this regard and has been criticized for "continu[ing] to use pre-UPC case law to limit the jurisdiction and powers of the court sitting in probate." *In re Estate of Camacho*, 2012 MP 8, ¶ 21, 9 N. Mar. I. 62. The majority of UPC states which have assigned subject matter jurisdiction for probate matters to their courts of general jurisdiction "have concluded that assignments to sit in probate do not deprive ordinary subject matter jurisdiction from the court of general jurisdiction." *In re Estate of Camacho*, ¶ 20 (collecting cases); *see also In re Estate of Fields*, 219 P.3d 995, 1006 (Alaska 2009) ("Nothing in the probate statutes or rules suggests that a superior court exercising probate jurisdiction is an inferior court without authority to decide questions of a decedent's interest in property or to issue equitable relief.").

(a) revokes any revocable:

(i) disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse;

(ii) provision in a governing instrument conferring a general or nongeneral power of appointment on the divorced individual's former spouse or on a relative of the divorced individual's former spouse; and

(iii) nomination in a governing instrument that nominates a divorced individual's former spouse or a relative of the divorced individual's former spouse to serve in any fiduciary or representative capacity, including a personal representative, executor, trustee, conservator, agent, or guardian; and

(b) severs the interests of the former spouses in property held by them at the time of the divorce or annulment as joint tenants with the right of survivorship and transforms the interests of the former spouses into tenancies in common.

Section 72-2-814(2), MCA. The plain language of the revocation upon divorce statutes provides that no revocation upon divorce occurs where a governing instrument expressly provides otherwise. In the probate statutes, a "governing instrument" is defined as "a deed; will; trust; insurance or annuity policy; account with POD designation; security registered in beneficiary form (TOD); pension, profit-sharing, retirement, or similar benefit plan; instrument creating or exercising a power of appointment or a power of attorney; or dispositive, appointive, or nominative instrument of any similar type." Section 72-1-103(20), MCA; *see also Reader v. Kelly (In re Estate of Kelly)*, 2014 MT 254, ¶ 17, 376 Mont. 361, 334 P.3d 911.

¶24 Here, we agree with the District Court that the MPSA is a governing instrument within the terms of the statute. "If two or more instruments are offered for probate before a final order is entered in a formal testacy proceeding, more than one instrument may be probated if neither expressly revokes the other or contains provisions which work a total revocation by implication." Section 72-3-314(1), MCA. The language of the MPSA does not expressly, or by implication, totally revoke Gerry's Last Will and Testament, but rather evidences a testamentary intent, specifically that the surviving ex-spouse, whether that be Gerry or Lorri, would inherit all real property not specifically divided in the MPSA as joint tenant with rights of survivorship. This language of the MPSA works to disclaim the revocation upon divorce statute's decree that would "sever[] the interests of the former spouses in property held by them at the time of the divorce or annulment as joint tenants with the right of survivorship and transform[] the interests of the former spouses into tenancies in common." Attorney Vines testified that was the intent of Gerry and Lorri in the MPSA, to have all property pass to the other for the remainder of their lifetime, which could then be passed to their children when the surviving ex-spouse passed away.

¶25 Vicki's reliance on *In re Estate of Cooney* is misplaced in this case. In that case, we addressed whether a district court, sitting in probate, had jurisdiction to consider the equitable claim of parties to a succession contract. In *In re Estate of Cooney*, the decedent and his wife divorced in 1980 and entered into a property settlement agreement which provided that the decedent would distribute his real property equally to their two daughters and to any future children of the decedent upon his death. The decedent had another

13

daughter and a son after the divorce, ultimately leaving the entirety of his real property to his son in a will executed in 2011. *In re Estate of Cooney*, ¶ 2. The decedent's will was admitted to formal probate, where the daughters sought to invalidate the portions of the will leaving all real property to the decedent's son, because it contravened the 1980 separation agreement. The district court determined it lacked jurisdiction over the daughters' claims while sitting in probate. *In re Estate of Cooney*, ¶ 3. We reiterated that succession contracts, where a person makes a valid contract to dispose of his or her property by will, are allowed in Montana, and that the 1980 separation agreement met the requirements of a valid succession contract. *In re Estate of Cooney*, ¶¶ 8-9. We determined the daughters, as third-party beneficiaries to the contract, did not seek a construction of the will or a determination of heirs and successors, but instead had a breach of contract claim which must be brought in an "action." *In re Estate of Cooney*, ¶¶ 13-14. Ultimately, we concluded that a "probate court lacks jurisdiction to adjudicate a party's rights under a succession contract." *In re Estate of Cooney*, ¶ 16.

¶26 Here, however, we are not presented with a succession contract, but instead an MPSA evidencing Gerry's testamentary intent to leave the real property he jointly owned with Lorri to Lorri upon his death. This document is in concert with Gerry's Will, which would have left his estate to Lorri, and specifically rejected the portion of the revocation upon divorce statute which would have transformed any property held as joint tenants with rights of survivorship into a tenancy in common. The District Court therefore correctly held that the MPSA "is a binding, governing instrument which provides for the distribution

14

of property subsequent to the dissolution but does not expressly revoke the Decedent's *Will*." The District Court properly exercised its subject matter jurisdiction to probate the multiple instruments offered for probate in this formal testacy proceeding and did not lack jurisdiction to interpret the MPSA under the facts of this case.

¶27     *2. Whether the District Court erred in its interpretation of the Marital Property Settlement Agreement.*

¶28     Vicki asserts that, if this Court determines the District Court properly exercised jurisdiction over the MPSA, the District Court nevertheless improperly applied and rewrote disputed terms of the MPSA, specifically those terms relating to ownership of real property and the division of the WLCC shares. Lorri contends the District Court made no error when it determined the MPSA was a binding judgment the PR was required to follow or when it interpreted and modified the MPSA consistent with Gerry's intent.

¶29     On appeal, Vicki bears the burden of establishing error by the District Court, *In re Estate of Lande*, ¶ 30, and we will not overturn the court's factual findings unless they are clearly erroneous. *Kuralt II*, ¶ 14. While we review the court's conclusions of law for correctness, *Kuralt IV*, ¶ 15, our review of the record demonstrates neither clear error in the District Court's findings nor an incorrect application of the law to those findings. In addition, though Vicki quibbles with the thoroughness of the court's findings in this case, this Court "adheres to the doctrine of implied findings which states that where a court's findings are general in terms, any findings not specifically made, but necessary to the judgment, are deemed to have been implied, if supported by the evidence." *Interstate Brands Corp. v. Cannon*, 218 Mont. 380, 384, 708 P.2d 573, 576 (1985).

15

¶30     Vicki's first asserted error relates to the distribution of real property jointly owned by Gerry and Lorri at the time of Gerry's death. This property is specifically addressed by the MPSA and its requirement that Gerry and Lorri "execute documents or deeds sufficient to ensure that joint tenancy with rights of survivorship continue on each and every piece of property which is jointly owned as of the date of dissolution," for "each and every interest in mineral, water or other similar rights," and for the "remainder interest in an estate for years." Vicki notes that, at the time of Gerry's death, the property was held by Gerry and Lorri as tenants in common and that the two did not sign the necessary deeds to make them joint tenants with rights of survivorship. True, though Gerry and Lorri were first informed the necessary deeds were ready to be signed while already on the road to their vacation in Idaho together and planned to sign the deeds upon their return. Gerry's untimely unexpected death in Idaho prevented the deeds from being completed, but the District Court correctly found that, under the terms of the MPSA, the PR was required to step "into [Gerry's] shoes with respect to his legal obligations" under the MPSA. *Baker v. Berger*, 265 Mont. 21, 27, 873 P.2d 940, 943 (1994). Vicki contends the MPSA was unconscionable because Gerry was unrepresented during its signing. The District Court heard testimony on this issue and impliedly rejected it. We find this implied rejection of Vicki's argument regarding the validity of the MPSA is supported by the evidence and do not disturb its conclusion in this regard.

¶31     Vicki's second asserted error relates to Gerry and Lorri's interest in WLCC. Vicki argues that, under the plain terms of the MPSA, Lorri's shares were ceded to WLCC upon

Gerry's death, leaving the Estate as sole shareholder in WLCC. Attorney Vines testified at the hearing that this language of the MPSA was a scrivener's error, and that the intention of Gerry and Lorri was to have the decedent's shares ceded to the corporation, leaving the survivor as sole shareholder in WLCC. The District Court quite reasonably accepted the testimony of Attorney Vines, the author of the MPSA, in this regard and reformed the terms of the MPSA to reflect Gerry's intent. Vicki's argument that she was prejudiced as a third party who acquired rights in good faith and for value is entirely unpersuasive as she is an heir to Gerry's estate who acquired nothing for value. In addition, rejecting the scrivener's error argument—made by the attorney who drafted the clause at issue, under oath—would provide Vicki with a windfall by revoking her mother's interest in WLCC and reducing the payments Vicki and her husband owed to WLCC for their leased property. The District Court did not commit clear error nor make an incorrect legal conclusion by reforming the MPSA regarding the WLCC shares to correct the scrivener's error.

¶32 *3. Whether the District Court abused its discretion by removing Vicki as Personal Representative.*

¶33 Vicki also contests her removal as PR of Gerry's estate, asserting she provided all required notice and that no conflict of interest would prevent her from serving as personal representative. Lorri asserts the District Court was well within its discretion to remove Vicki as PR because Vicki's actions in this matter were sufficient to warrant her removal.

¶34 "A trial judge has broad discretion to remove a personal representative provided the grounds for removal are valid and supported by the record." *In re Estate of Hannum*, ¶ 28 (citing *In re Estate of Greenheck*, 2001 MT 114, ¶ 19, 305 Mont. 308, 27 P.3d 42). A

17

district court has authority to remove a personal representative when it determines removal would be in the "best interests of the estate." *In re Estate of Bennett*, 2013 MT 228, ¶ 11, 371 Mont. 270, 312 P.3d 400 (quoting § 72-3-526(2)(a), MCA). "[A]n order of removal is harsh and severe, and irregularities that are not directly harmful will be overlooked, and if the court can remedy the matter readily, no removal will be ordered." *In re Estate of Hannum*, ¶ 28 (citing *In re Estate of Townsend*, 243 Mont. 185, 188-89, 793 P.2d 818, 820 (1990)).

¶35 Upon our review of the record, it is apparent the District Court's decision to remove Vicki as PR was valid and supported by the record. *In re Estate of Hannum*, ¶ 28. Vicki did not provide direct notice to Lorri as a known creditor of Gerry's estate, as Lorri was the one who paid for all of Gerry's funeral expenses, instead publishing notice only in the newspaper. "[N]otice by publication is insufficient to protect a creditor's property interest where the identity of a creditor is known or reasonably ascertainable: instead, a creditor must be given notice by mail or other means as certain to ensure actual notice." *Wood v. Anderson*, 2017 MT 180, ¶ 17, 388 Mont. 166, 399 P.3d 304 (internal quotation marks omitted) (citing *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 491, 108 S. Ct. 1340, 1348 (1988)). Further, the significant deterioration in the relationship between Vicki and Lorri and Vicki's desire to use beneficial provisions of the MPSA to her benefit while disclaiming provisions which would benefit Lorri was apparent to the District Court. The District Court noted Vicki refused to step into Gerry's shoes and perform his legal obligations under the MPSA. Ultimately, the record demonstrates that the removal of Vicki

as PR and the appointment of a neutral, uninterested, and unbiased special administrator was necessary in this case. Leaving Vicki as PR to continue fighting with Lorri in multiple jurisdictions certainly would not "enable an expeditious settlement and closure of the estate." *In re Estate of Greenheck*, ¶ 20. The District Court did not abuse its discretion by removing Vicki as PR and appointing a special administrator under the facts of this case.

¶36 *4. Whether the District Court abused its discretion by disallowing Vicki's attorney fees beyond those required to file the documents necessary to open the probate.*

¶37 Finally, Vicki asserts the District Court abused its discretion by disallowing Vicki's attorney fees beyond those required to file the documents necessary to open the probate. The award, or denial, of attorney fees to a personal representative is left to the sound discretion of the district court. *In re Estate of Stone*, 236 Mont. at 4, 768 P.2d at 336.

¶38 Here, we cannot find an abuse of discretion with the District Court's order because, while it disallowed Vicki's attorney fees beyond those needed to open the probate, it provided that the court-appointed special administrator could allow Vicki to recover the attorney fees determined by the special administrator to be legitimate estate expenses. "If a personal representative or person nominated as personal representative defends or prosecutes a proceeding in good faith, whether successful or not, the personal representative is entitled to receive from the estate the personal representative's necessary expenses and disbursements, including reasonable attorney fees incurred." Section 72-3-632, MCA. If the special administrator determines Vicki's actions were taken in good faith, she may recover such fees. If her actions were not taken in good faith, they may be properly denied. *See In re Estate of Evans*, 217 Mont. 89, 97, 704 P.2d 35, 40 (1985). As

19

this matter has been appealed, the special administrator has not yet made any decision to either allow or disallow Vicki's claimed attorney fees based on whether they were "legitimate Estate expenses" as contemplated by the District Court's order. The special administrator, upon remand, may determine which of Vicki's actions may have furthered the probate and which were contrary to the purposes of the probate and the intent of the decedent. The court's order regarding Vicki's attorney fees was not an abuse of discretion.

## CONCLUSION

¶39 The District Court had jurisdiction over the MPSA in the probate matter and did not err in its interpretation of the MPSA. In addition, the District Court did not abuse its discretion by removing Vicki as personal representative of the estate or by disallowing Vicki's attorney fees.

¶40 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

20