No. 00-190

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 114

IN RE THE ESTATE OF

LOIS V. GREENHECK, Deceased.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Douglas J. DiRe, Dayton Law Firm, Anaconda, Montana

For Respondents:

Dale E. Reagor, Luxan & Murfitt, PLLP, Helena, Montana

Submitted on Briefs: February 23, 2001
Decided: July 2, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Joy Kocher and Judy Reed, heirs and co-personal representatives of Lois Greenheck's

estate, filed a first and final accounting and consolidated petition for proposed distribution of Lois' estate in the District Court for the First Judicial District in Lewis and Clark County. Dr. Robert Greenheck, an heir who had been previously removed as a co-personal representative by the District Court, objected to the proposed distribution of the estate. Following a hearing, the District Court approved the proposed distribution. Robert appeals his removal as co-personal representative and from the District Court's order approving the proposed distribution. We affirm in part and reverse in part.

¶2 The parties present the following issues on appeal:

¶3 1. Did the District Court err when it removed Robert as a co-personal representative of Lois Greenheck's estate?

¶4 2. Did the District Court err when it allowed the remaining co-personal representatives to deduct $26,999.00 of gift taxes from Robert's share of the estate?

## FACTUAL BACKGROUND

¶5 Lois V. Greenheck died on October 30, 1997, and left a Will, validly executed on July 2, 1963, which named her three children as co-personal representatives and divided her estate equally among them. On November 17, 1997, two of Lois' children, Joy Jean Kocher and Judy Fay Reed (the Sisters), submitted a petition for formal probate of Lois' Will to the District Court for the First Judicial District in Lewis and Clark County. In their petition, the Sisters requested that they alone be appointed co-personal representatives due to a history of family conflict with their brother, Dr. Robert Roy Greenheck. After Robert objected and asserted his right to appointment as co-personal representative, the parties stipulated that all three children would be appointed and the District Court so ordered on December 22, 1997.

¶6 On June 2, 1998, the Sisters filed a Motion for Hearing on Proposed Distribution of Estate. On July 24, 1998, the District Court held a hearing to consider the motion. Robert was not present at the hearing. On July 29, 1998, the District Court ordered Robert to provide a list of those personal property items that he did not consider part of the estate and those personal property items he wished to receive from the estate. The District Court further ordered Robert to sign federal and state tax documents that had been prepared for the Sisters and return the proposed tax documents by July 30, 1998. The District Court specified that Robert's failure to sign and return the tax documents by July 30, 1998,

would result in his removal as co-personal representative.

¶7 On July 31, 1998, the Sisters filed a motion to remove Robert as a co-personal representative for failing to sign and return tax documents and checks. On August 26, 1998, the Sisters filed an amended motion, which cited Robert's failure to provide personal property lists and alleged a break-in to Lois' residence as additional reasons for his removal as co-personal representative.

¶8 The parties presented conflicting testimony at the October 22, 1998, hearing held pursuant to the motion to remove Robert. The Sisters testified that the tax documents were accurate and that Robert simply refused to sign, only belatedly asserting that the returns were inaccurate. They also testified that Robert did not provide the personal property lists ordered by the District Court. Joy testified that certain items were missing from her mother's house when she went to inventory the property and that she suspected that Robert had broken into the house and removed the missing items. Robert justified his failure to submit the personal property lists by alleging that he was denied access to the house. He further testified that the tax documents were incomplete and inaccurate.

¶9 Following the hearing, the District Court removed Robert as co-personal representative of the estate. The District Court determined that there was significant hostility between Robert and the Sisters, and that Robert's removal would "enable an expeditious settlement and closure of the estate."

¶10 On October 26, 1999, the Sisters filed a First and Final Account and Report and Consolidated Petitions for an Order or Orders of Court Allowing and Settling Personal Representative's First and Final Account and Report, Approving Distribution of Testate Estate, and Adjudicating Complete Settlement of Estate and Discharging the Co-Personal Representatives. In the petition the Sisters requested that the $31,647.00 co-representatives fee be split equally between them. The Sisters also proposed a distribution of the estate.

¶11 On November 1, 1999, the Sisters filed an amendment to the proposed distribution which assessed Robert's share of the estate $26,999.00 for gift tax on a loan from Lois to Robert which they alleged had been cancelled. During the administration of the estate, the Sisters obtained documents which suggested that Robert had received a gift from Lois in the amount of $70,300.00. In a letter dated November 12, 1998, the Sisters informed Robert's counsel that a $70,300.00 loan Lois made to Robert in January of 1996, which

had been secured by a deed of trust for Robert's house, had not been repaid. Although Lois had recorded a release of the deed of trust on July 16, 1996, there was no record that Lois received a $70,300.00 payment from Robert. The letter also advised Robert that if he disputed the existence of a gift, he should provide the Sisters' counsel with facts in support of his position. He was advised that if he did not do so by December 1, 1998, the Sisters would assume that a gift had been made and proceed accordingly. When Robert failed to respond, the co-personal representatives filed an amended federal estate tax return which reported the gift and then charged Robert's share of the estate the additional $26,999.00 in federal taxes which were owed because of the gift.

¶12 At the hearing on November 18, 1999, Robert testified that he had received value as either gifts or loans from Lois and admitted that the $70,300 temporarily secured by his house bore some relationship to the value received. However, Robert testified that he executed the deed of trust to protect his equity in his home prior to filing for bankruptcy, and that he later released the lien when he learned that it might endanger Lois' assets during the bankruptcy proceedings. At one point during cross-examination, the following exchange took place:

A It - my feeling was she had given me these as gifts and if I could I was going to give her money back as gifts.

Q Okay. So - you do agree with me then that the $70,300 had some relationship to money your mother had given you in past years?

A Yes sir.

¶13 Robert further testified:

Q Why don't you explain to me how you were going to explain to the bankruptcy court that you had a 70 thousand dollar lien on your house and you owed your mother 70,000 but you are testifying now that you didn't owe her anything?

A Mr. Reagor, I did not say I ever owed my mother 70,000. I said that there were loans over a period of years in excess of 40,000 that I kept track since 1975 which - when I was in medical school, which I was going to say gave some reason for that lien being placed.

Q Okay. So -

A I never owed my mother 70,000.

Q Well at least in March of 1996 you signed a document saying you owed her $70,300.

A Yes sir.

The Court: I don't understand that.

Mr. Reagor: I don't -

The Court: Makes no sense to me. You signed a lien saying you owed your mother $70,000 and yet you are sitting here saying you didn't owe her $70,000. So if you didn't owe her $70,000 and you did that pending a bankruptcy proceeding that is fraud.

A I can put a lien on my house for anybody to anyone, anything, at will.

The Court: Not if you know there is a bankruptcy proceeding pending, you can't.

¶14 The District Court issued its Decision and Order on November 26, 1999. The District Court approved the first and final account and proposed distribution of the estate. The District Court also granted the payment of fees for the co-personal representatives. Robert now appeals from the District Court's orders which removed him as co-personal representative and approved the distribution which deducted $26,999.00 for federal taxes from his share of the estate.

## STANDARD OF REVIEW

¶15 The standard of review of a district court's findings of fact is whether they are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Norwood v. Service Distrib., Inc.*, 2000 MT 4, ¶ 21, 297 Mont. 473, ¶ 21, 994 P.2d 25, ¶ 21. We review a district court's conclusions of law to determine whether the

court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## DISCUSSION

## ISSUE 1

¶16 Did the District Court err when it removed Robert as a co-personal representative of Lois Greenheck's estate?

¶17 Robert contends that there were no legal grounds for his removal as co-personal representative and that the District Court abused its discretion when it removed him. He states that he did not prepare a personal property list because he was denied access to the house, and did not sign the tax documents because the returns were inaccurate and incomplete.

¶18 In response, the Sisters argue that the District Court was justified in its removal of Robert because he refused to sign tax returns, broke into Lois' house and removed property without the knowledge or permission of the other co-representatives, and failed to comply with the District Court's order to prepare personal property lists and sign tax documents.

¶19 Section 72-3-526, MCA, provides for the removal of a personal representative only for cause. Cause is defined broadly as anything "in the best interests of the estate..." *See* § 72-3-526(2)(a), MCA. In prior decisions interpreting § 72-3-526, MCA, this Court has held that a trial judge should be given broad discretion to remove a personal representative provided the grounds for removal are valid and supported by the record. *See In Re Estate of Robbin* (1987), 230 Mont. 30, 33, 747 P.2d 869, 871; *In Re Estate of Wooten* (1982), 198 Mont. 132, 137, 643 P.2d 1196, 1199.

¶20 Although the District Court did not articulate the grounds for Robert's removal as precisely as it might, the District Court specifically found that significant hostility and alienation existed between Robert and the Sisters and that Robert's removal would enable an expeditious settlement and closure of the estate. Moreover, the record demonstrates that the Sisters were unable to obtain necessary information from Robert and that Robert violated specific orders of the District Court when he refused to prepare personal property lists and sign tax documents. Consequently, we conclude that the District Court did not

abuse its discretion when it removed Robert as a co-personal representative.

¶21 Furthermore, we find no basis on which to reverse the District Court's finding that Robert provided no useful service as co-personal representative. We therefore decline to award Robert his requested one-third share of the personal representative fees.

ISSUE 2

¶22 Did the District Court err when it allowed the remaining co-personal representatives to deduct $26,999.00 in gift taxes from Robert's share of the estate?

¶23 The $26,999.00 charged against Robert's share of the estate resulted from additional gift tax liability. The Sisters filed an amended tax return when they learned that Lois cancelled a $70,300.00 loan to Robert by releasing a lien on Robert's house. Robert now argues that the deed of trust executed in favor of Lois was a mistake which the parties corrected by a release. Therefore, according to Robert, there is no basis for the District Court to allow a $26,999.00 gift tax charge against his share of the inheritance. Robert also contends that charging the estate's tax liability solely to his share of the estate violated § 72-16-603, MCA, which requires that tax be apportioned to each interested person in proportion to their interest in the estate.

¶24 The Sisters respond that the District Court heard conflicting testimony concerning the alleged loan and found that Robert received a gift by the cancellation of a $70,300.00 lien against his property. Furthermore, Robert failed to respond to the letter of November 12, 1998, which invited him to contest the determination that the lien cancellation was a gift. Because Robert failed to respond, the Sisters filed the amended return and paid the additional tax. As a result, they argue that Robert is equitably estopped from challenging the gift determination. In response to Robert's argument that the tax should be apportioned among the heirs, the Sisters seem to agree that § 72-16-603, MCA, requires apportionment of tax liability in accordance with the value of the interest received by each person with an interest in the estate. However, the Sisters contend that because Robert received a $70,300.00 gift, his share should be charged with the extra tax which resulted from the gift.

¶25 We agree with the District Court's conclusion that additional taxes were due on the estate. The District Court determined that Lois intended the several loans she made to Robert be repaid, as evidenced by the lien executed in her favor. The evidence in the

record supports the District Court's finding that additional taxes were due. Robert's testimony established that he received value in the form of loans or gifts which bore a direct relationship to a lien on his house executed in favor of Lois. Releasing that lien amounted to a discharge of the debt and resulted in additional tax liability for the estate.

¶26 However, we do not agree that the entire amount of the additional gift taxes should be deducted from Robert's share of the estate. Section 72-16-603, MCA, clearly provides that taxes be apportioned among all persons interested in the estate according to their proportionate interest unless the will provides otherwise. The Will of Lois Greenheck does not provide otherwise. Therefore, we conclude that the District Court had no legal basis to charge the entire $26,999.00 tax liability to Robert's share of the estate. Consequently, the District Court erred when it allowed the remaining co-personal representatives to deduct $26,999.00 paid for gift taxes from Robert's share of the estate. Accordingly, we reverse that part of the District Court's order and remand for entry of judgment which apportions the $26,999.00 of additional gift taxes among the three heirs. The judgment of the District Court is otherwise affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ PATRICIA COTTER