DA 12-0003

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 171

IN THE MATTER OF THE ESTATE
OF LOUIS G. HANNUM, SR.,

        Deceased.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DP 10-23
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

            Don C. St. Peter, St. Peter Law Offices, P.C., Missoula, Montana
            Naomi R. Leisz, Leisz Law Office, P.C., Trout Creek, Montana

       For Appellees:

            Dirk A. Williams, Danielle A. Coffman, Crowley Fleck PLLP, Missoula,
            Montana

            Shane A. Vannatta, Reid J. Perkins, Worden Thane P.C., Missoula,
            Montana

                     Submitted on Briefs:  June 27, 2012
                               Decided:  August 10, 2012

       Filed:

                    _____
                               Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    Louis G. Hannum, Jr. (Louis Jr.) appeals from an Order issued by the Twentieth Judicial District Court, Sanders County, removing him for cause as the personal representative of the estate of Louis G. Hannum, Sr. (Louis Sr.).  We affirm.

## BACKGROUND

¶2    Louis Sr. passed away on August 12, 2010, and is survived by his children, Louis Jr., Mike and Mark; and his grandchildren, Monika, Veronica, Michelle, Naomi, Zachary, Esther and Jim.  Louis Sr. was predeceased by his daughter, Cheryl Gallagher, who was Esther's and Jim's mother.

¶3    On October 6, 2005, Louis Sr. executed his Last Will and Testament (2005 Will).  The 2005 Will specifically revoked Louis Sr.'s prior will from 1995, and appointed his son, Louis Jr., as the personal representative of Louis Sr.'s estate.  Pursuant to the 2005 Will, each of Louis Sr.'s seven surviving grandchildren was to receive $1,000.  The remainder of Louis Sr.'s estate was to be distributed equally between his four children, with Cheryl's share to be distributed equally to her children, Esther and Jim.

¶4    Louis Jr. filed an application for informal probate of will and appointment of personal representative of Louis. Sr.'s estate on September 2, 2010.  The following day, Louis Jr. filed a pleading labeled "Notice and Information to Heirs and Devisees" to inform Louis Sr.'s surviving relatives that Louis Jr. had been appointed the personal representative of the estate. The notice was sent to Louis Jr., Mike, Mark, Esther and Jim, but not to the remaining grandchildren.  Naomi did, however, know of Louis Jr.'s appointment because Naomi is

2

Louis Jr.'s daughter and she is acting as his counsel. It is unclear whether Zachary, Louis Jr.'s son, was aware of these proceedings. Notably, Louis Jr. did not send notice to Louis Sr.'s grandchildren Monika, Veronica and Michelle.

¶5 The next document Louis Jr. filed, on July 20, 2011, was entitled "Final Accounting, Petition for Determination of Testacy, For Determination of Heirs, and For Settlement and Distribution of Testate Estate by Personal Representative" (Final Accounting). The Final Accounting was served on Louis Jr., Mike, Mark, Esther and Jim, but once again, Louis Jr. did not serve the remaining grandchildren. Louis Jr., however, affirmatively stated to the District Court that he had mailed the Final Accounting to all persons interested under the will.

¶6 Louis Jr. attached an Inventory to the Final Accounting that purportedly included everything to be disbursed under the 2005 Will. The Inventory included two promissory notes, valued at $625,000 total, that were allegedly owed to the estate. However, the Inventory contained no reference to the date, payment terms, balance actually due, interest rate or any other aspect of the notes. Significantly, the notes were not mentioned in Louis Sr.'s 2005 Will, but rather his 1995 will. According to Esther, Jim and Mike, the promissory notes had been fully paid off.

¶7 The Inventory also included 31 shares of Pitman Warehousing Stock[1] valued at $189,689. Louis Jr. unilaterally determined the stock was undervalued when it was sold by Louis Sr. in 2005, and because of this undervaluation, he increased the value of the estate by

3

the amount of money Louis Sr. should have allegedly received from the sale of stock. Of the 31 shares, 15 had been sold to Esther, and 16 to William Messenger. William is Mike's ex-son-in-law and has no legal relationship to Esther.

¶8 Additionally, the Inventory included $542,500 worth of allegedly invalid gifts made by Louis Sr., out of his personal Vanguard account, to various family members. Louis Jr. unilaterally declared the gifts invalid, and made no attempt to invalidate the gifts through a court proceeding. These gifts included monies given to Esther, Jim and Mike, as well as gifts to Mike's wife, Mike's children and their spouses, a Bobby Doody, and a Teresa Gallagher.

¶9 In total, Louis Jr.'s unverified additions to the inventory increased its value by $1,357,189, and raised the total value of the probate assets to $1,624,959.84. Based upon this increase, Louis Jr. claimed and asked the court to approve $32,899.20 in personal representative fees for himself and $49,348.80 in attorney fees for his daughter/counsel.

¶10 From the $1,624,959.84, Louis Jr. subtracted his claimed personal representative fees, his daughter's attorney fees, and administrative expenses to arrive at the "total available for final distribution," which was $1,542,109.30. From there, he deducted the amounts of the promissory notes in the form of specific bequests to himself and his brother Mark, despite his admission that the notes were devised in the revoked 1995 will and were not mentioned in the 2005 Will. This left $917,109 to be distributed.

---

[1] Pitman Warehousing is a Hannum family S-corporation located in New Jersey.

¶11     Louis Jr. next calculated each beneficiary's final distribution. In his computations, Louis Jr. deducted from Esther's share of the estate money that Esther allegedly owed to compensate the estate for the undervalued Pitman Warehousing stocks she purchased, for the undervalued shares William Messenger purchased, for the invalid gifts she received, and for the invalid gifts Bobby Doody received. This left Esther purportedly owing the estate $267,889. Louis Jr., however, forgot to factor in the $114,638 that he calculated the estate owed Esther. Similarly, Louis Jr. reduced Jim's distribution by deducting the gifts to Jim and Teresa Gallagher. This left Jim owing $10,062 to the estate. Louis Jr. also deducted from Mike's distribution gifts to Mike's wife, his daughters, his son-in-law, and two ex-sons-in-law. After these deductions, Mike supposedly owed the estate $52,825.

¶12     Nowhere in his Final Accounting did Louis Jr. mention the $1,000 bequests to the grandchildren as provided in the 2005 Will.

¶13     After including these reimbursements to the estate, Louis Jr. calculated he would receive $541,775, as would his brother Mark. Using these figures, Louis Jr. specifically requested that the estate "*should be distributed*" as outlined and asked the court to approve the Final Accounting in his prayer for relief.

¶14     On August 15, 2011, in response to Louis Jr.'s actions, Esther and Jim filed a motion to remove Louis Jr. as personal representative of Louis Sr.'s estate. On September 6, 2011, Mike joined in Esther's and Jim's motion to remove Louis Jr. and filed a brief in support. Both briefs expressly objected to Louis Jr.'s Final Accounting and Inventory. The District Court held a hearing on the motion to remove Louis Jr. as personal representative on

5

November 1, 2011, and on December 14, 2011, the District Court issued its Order removing Louis Jr. as personal representative and appointing attorney John Mercer as the successor personal representative.[2]

¶15    In its Order, the District Court concluded that Louis Jr. violated numerous fiduciary duties, and as a result, his removal for cause was appropriate.  The court treated the Final Accounting as that required by § 72-3-1005, MCA, and the Inventory as that required by § 72-3-607, MCA.  In its conclusions of law, the District Court determined that Louis Jr. had failed in his duty to administer the probate according to the 2005 Will, a duty imposed by § 72-34-101, MCA, when he included the value of the alleged promissory notes and distributed them between himself and Mark without authority under the 2005 Will.  The court additionally found that Louis Jr. failed in his duty to avoid conflicts of interest, in his duty to use ordinary skill and prudence, in his duty to exercise discretionary powers reasonably, and in his duty to file or otherwise deliver to interested parties, within nine months of his appointment, an inventory of estate assets that included a full and true value of the decedent's interest in every item listed in the inventory.  Louis Jr. appeals his removal for cause.

¶16    We restate the issue on appeal as follows:

¶17    *Did the District Court err when it removed Louis Jr. for cause as the personal representative of Louis Sr.'s estate?*

## STANDARD OF REVIEW

---

[2] The District Court appointed Mercer because the familial successor personal representatives had either waived their

6

¶18     We review a district court's decision regarding the removal of an estate's personal representative to determine whether the court abused its discretion. *In re Estate of Anderson-Feeley*, 2007 MT 354, ¶ 6, 340 Mont. 352, 174 P.3d 512. A trial court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *In re Everett*, 2012 MT 8, ¶ 11, 363 Mont. 296, 268 P.3d 507.

¶19     We review a district court's findings of fact to ascertain whether they are clearly erroneous. *In re Estate of McDermott*, 2002 MT 164, ¶ 22, 310 Mont. 435, 51 P.3d 486. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that a mistake has been committed. *McDermott*, ¶ 22. The district court's conclusions of law are reviewed for correctness. *McDermott*, ¶ 22.

## DISCUSSION

¶20     Louis Jr. argues that the District Court erred when it treated his Final Accounting and Inventory as a petition to the court for formal approval instead of a proposed distribution as allowed by § 72-3-903, MCA. Pursuant to § 72-3-903, MCA, "After the probable charges against the estate are known, the personal representative may mail or deliver a proposal for distribution to all persons who have a right to object to the proposed distribution."

¶21     Louis Jr.'s arguments notwithstanding, it is clear from the Final Accounting that it was not merely a proposed distribution, but rather a petition to the court for formal approval.

right to be appointed, or as the District Court concluded, expressed no interest in being the personal representative.

Instead of mailing the Final Accounting to other interested parties, as outlined in § 72-3-903, MCA, Louis Jr. asked the court to distribute the assets of the estate in accordance with his Final Accounting and Inventory without giving the other interested parties time to object prior to filing. In addition, Louis Jr. never once mentioned the word "proposal" in his document or its cover letter, admitted at the removal hearing that nothing in the document suggested it was a proposal, and never submitted an amended Final Accounting to correct any errors. Accordingly, the District Court did not err when it treated the Final Accounting as that required by § 72-3-1005, MCA, and the Inventory as that required by § 72-3-607, MCA.

¶22 Louis Jr. additionally argues that the District Court's Findings of Fact, ¶¶ 9, 10 and 16, are not supported by substantial credible evidence. Those findings state:

> 9. [Personal Representative] Louis G. Hannum, Jr.'s Inventory was filed after the 9 month deadline required by Montana law (Mont. Code Ann. § 72-3-607), and does not provide the content, accuracy, and ascertainment of values. The Inventory is not in the proper form. [Personal Representative] Louis G. Hannum, Jr. did not send the inventory to all interested parties.

> 10. [Personal Representative] Louis G. Hannum, Jr.'s Accounting is insufficient as to form, oath, content, accuracy, and completeness.

> .   .   .

> 16. At this point, neither of the branches of [Louis Sr.'s] family trusts the other.

¶23 Louis Jr. asserts that the District Court erred because his petition was merely a proposal, and that it therefore did not need to abide by the requirements in the probate code. Because we agree with the District Court that Louis Jr.'s Final Accounting and Inventory

8

constituted a formal request for approval, and not a proposal, he was required to comply with the requirements of § 72-3-607, MCA, and § 72-3-1005, MCA. A personal representative must prepare an inventory within nine months of his appointment that includes an inventory of the decedent's property and its fair market value at the time of the decedent's death. Section 72-3-607, MCA. A final accounting must be made "under oath showing the amount of money received and expended by the personal representative, the amount of all claims presented against the estate, and the names of the claimants and all other matters necessary to show the state of its affairs." Section 72-3-1005, MCA.

¶24 Louis Jr. failed to comply with § 72-3-607, MCA, by filing his Inventory more than nine months after his appointment. Louis Jr. also failed to comply with the requirements of § 72-3-1005, MCA, he did not include the $1,000 bequests to Louis Sr.'s grandchildren, and he included highly speculative values in his accounting. Accordingly, the District Court's Findings of Fact Numbers 9 and 10 are supported by substantial credible evidence.

¶25 In regards to Finding of Fact Number 16, the District Court was in the best position to determine if hostility existed between the parties because it heard testimony, observed the parties' interactions, and read their briefing at the District Court. The District Court's conclusion is supported in the record, which demonstrates that the parties are not on good terms. Louis Jr.'s attempt to collect over $300,000 from Esther, Jim and Mike, while simultaneously awarding himself nearly $600,000 certainly is not evidence of love and cooperation between the parties. Thus, Finding of Fact Number 16 is supported by substantial credible evidence, and is therefore not clearly erroneous.

9

¶26 Louis Jr. further argues that there were no legal grounds for his removal. He states that the District Court incorrectly relied on a conflict of interest between himself and the other beneficiaries, that the Final Accounting was a proposal, and that any errors in the Inventory could be remedied with court supervision. Esther, Jim and Mike argue that Louis Jr.'s removal was appropriate because he breached his duty to administer the trust, his duty to avoid conflicts of interest and his duty of loyalty.

¶27 A district court may remove a personal representative for cause if it is in the best interests of the estate or if it is shown that a personal representative has "failed to perform *any* duty pertaining to office." Section 72-3-526(2), MCA (emphasis added). Thus, breach of a single duty is sufficient to justify removal for cause. A personal representative is under a duty to administer the estate according to the terms of any probated and effective will and the probate code. Section 72-3-610, MCA. The fiduciary duties of a trustee also apply to a personal representative in a probate matter, including the duty to administer the estate according to the decedent's will. Section 72-3-610, MCA; § 72-34-101, MCA.

¶28 A trial judge has broad discretion to remove a personal representative provided the grounds for removal are valid and supported by the record. *In re Estate of Greenheck*, 2001 MT 114, ¶ 19, 305 Mont. 308, 27 P.3d 42. However, an order of removal is harsh and severe, and irregularities that are not directly harmful will be overlooked, and if the court can remedy the matter readily, no removal will be ordered. *In re Estate of Townsend*, 243 Mont. 185, 188-89, 793 P.2d 818, 820 (1990).

¶29 With these rules in mind, we conclude that the District Court correctly ruled that Louis Jr. failed in his duty to administer the estate in accordance with the 2005 Will and the probate code. The 2005 Will explicitly states that each of Louis Sr.'s grandchildren was to receive $1,000 upon his death; Louis Jr. did not include these bequests in his Final Accounting and Inventory. In addition, the 2005 Will did not include the two promissory notes, yet Louis Jr. included them in the Final Accounting and Inventory. Louis Jr. even admitted that his distribution of the notes was based on the revoked 1995 will. Accordingly, Louis Jr. failed to administer the estate according to the 2005 Will.

¶30 Louis Jr. also failed to administer the estate in accordance with the probate code. Pursuant to the code, Louis Jr. had 30 days after his appointment to notify *all* heirs and devisees of his appointment and the identity of the court in which the probate had been filed. Section 72-3-603, MCA. There is no evidence that Louis Jr. or his counsel sent the required notice to at least three devisees, Monika, Veronica and Michelle.

¶31 Louis Jr., pursuant to § 72-3-607, MCA, was also required to file or otherwise deliver to interested parties, within nine months after appointment, an inventory of estate assets that includes "a full and true value of the decedent's interest in every item listed in the inventory." Filing an inventory in which assets are omitted and valuations are subject to question does not fulfill this requirement. *Townsend*, 243 Mont. at 189, 793 P.2d at 821. Louis Jr. breached his duty to administer the estate in accordance with the probate code when he filed his Inventory late, when his Inventory did not comply with § 72-3-607, MCA, and when his Final Accounting did not comply with § 72-3-1005, MCA. Moreover, as in

11

*Townsend*, Louis Jr. further breached his duty when he included valuations that were subject to question, such as the promissory notes, Pittman Warehousing shares, and invalid gifts, in his Final Accounting and Inventory.

¶32 Accordingly, we conclude that the District Court correctly determined that Louis Jr. breached his duty to administer the estate in accordance with the 2005 Will and the probate code. We need not address Louis Jr.'s remaining arguments that he did not breach other fiduciary duties because a district court must only find that a personal representative failed to perform *any* duty in order to remove the personal representative for cause. Section 72-3-526(2)(b), MCA.

¶33 In reaching its decision, the District Court relied on substantial credible evidence. Though we disfavor removing a personal representative, the District Court has broad discretion in its decision to remove a personal representative, and we conclude that the District Court did not abuse that discretion when it removed Louis Jr. for cause.

## CONCLUSION

¶34 For the reasons stated above, we affirm the District Court's Order removing Louis Jr. for cause as the personal representative of the estate of Louis Sr.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ BETH BAKER

Justice James C. Nelson, specially concurring.

¶35 I concur in the result of the Court's Opinion, but not in all that is said. It is clear that Louis Jr. was malfeasant in conducting his duties as personal representative and that he was properly removed as personal representative by the District Court. While my analysis for reaching this legal conclusion would differ from that of the Court's, it is not necessary that I set out that analysis, since the Court has reached the correct result in any event.

¶36 Therefore, I specially concur.

/S/ JAMES C. NELSON