FILED

03/31/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0246

DA 25-0246

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 66

IN THE MATTER OF THE ESTATE OF
SEAN EDWARD THOMAS,

     Decedent.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DP-22-63
Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Rachel H. Parkin, Gerald W. Steinbrenner, Milodragovich, Dale &
Steinbrenner, P.C., Missoula, Montana

     For Appellees:

          David B. Cotner, Taylor N. Eisenzimer, Cotner Ryan Blackford,
PLLC, Missoula, Montana

          Submitted on Briefs:  February 25, 2026

                    Decided:  March 31, 2026

Filed:

_____
              Clerk

Justice Katherine M. Bidegaray delivered the Opinion of the Court.

¶1 Appellant Jaimie Thomas (Jaimie), personal representative for Sean Edward Thomas' estate (the Estate), appeals the March 2025 order of the Montana Second Judicial District Court, Butte-Silver Bow County, granting a "Preliminary Injunction" to Appellees Paul Thomas, Thomas, Inc., and Teton Village, L.L.C. (collectively, Paul). We address the following restated issues:

1. *Whether the District Court had jurisdiction to restrain Jaimie's conduct as personal representative.*

2. *Whether the District Court abused its discretion in restraining Jaimie's conduct by requiring her to seek prior court approval for any estate distributions.*

3. *Whether the District Court was required to impose a bond.*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Sean Thomas died on March 29, 2022. Jaimie is Sean's widow; Paul is Sean's father. It is undisputed on the record here that Sean nominated Jaimie as personal representative and named her as sole heir in his will. On April 26, 2022, Jaimie filed an application for informal probate of Sean's will and informal appointment as personal representative in the Butte-Silver Bow County District Court. The clerk of court opened an informal probate and informally appointed Jaime personal representative. After appointment, Jaimie filed her statement of acceptance of appointment and acknowledgement and acceptance of duties. In May 2022, Jaimie filed a notice of her appointment as personal representative and published notice to creditors.

2

**Background Facts/the Thomas Family Businesses**

¶3 Paul's family has been in the apparel business for over a century. In the mid-2010s, in addition to his brick-and-mortar store in Butte, Paul began retailing online through Amazon. In 2018-2019, Sean and Jaimie joined the family business and the three formed Thomas Ent LLC (Thomas Ent) for the purposes of selling apparel at their entities, Victoria Nicole's Closet and Shoppelina, on Amazon. Separately, Paul owns Thomas, Inc., (Thomas Inc), Teton Village, L.L.C. (Teton Village), and VN Closet, LLC. The Amazon stores generated millions of dollars in annual sales, which, according to the family's business plan, were directed into Thomas Ent.[1]

**The Thomas Ent Litigation**

¶4 On February 6, 2023, almost one year after Sean's death, Paul initiated a civil action in the Butte-Silver Bow County District Court as Cause No. DV 23-31. He named, as plaintiffs, himself, Thomas Inc, and Teton Village; and named as defendants, Thomas Ent; Shoppelina LLC; the Estate; and Jaimie, as personal representative and in her individual capacity. Paul sought a declaratory judgment as to his ownership interest in Thomas Ent and alleged numerous contract- and tort-based claims, including claims against Jaimie personally. Jaimie, on behalf of herself, the Estate, and Thomas Ent, later filed a counter-claim against VN Closet, LLC. At Paul's request, the District Court granted a

---

[1] We take these facts as alleged in Paul's complaint and amended complaint in the Thomas Ent litigation, *infra*.

3

temporary restraining order barring any distributions or payments from the Thomas Ent account without a court order.

**Paul's "Motion for a Temporary Restraining Order and Preliminary Injunction" in the Informal Probate Matter**

¶5 On February 13, 2025, Paul filed a "Motion for Temporary Restraining Order and Preliminary Injunction" in the probate matter, Cause No. DP 22-63, asking for injunctive relief under § 27-19-314, MCA (temporary restraining orders), and § 27-19-201(1), MCA (preliminary injunctions). He alleged that Jaimie had been "improperly taking and depleting funds from the Estate, frustrating creditors' ability to collect, and ultimately dwindl[ing] what [was] left in the Estate in the event" of a likely judgment against the Estate in the Thomas Ent litigation. Specifically, he alleged that Jaimie had paid out over $700,000 in estate funds for non-estate purposes, including for her personal expenses and defense in the Thomas Ent litigation, "rapidly depleting" the Estate. Paul claimed "immediate steps should be taken to prevent Jaimie from further depleting Estate funds for personal litigation and unrelated obligations" because, "if left unchecked, her actions could result in significant financial harm" to estate creditors and beneficiaries. Paul identified himself, his businesses, and Sean's mother, Terry O'Keefe (Terry), as "legitimate creditors."[2]

¶6 The next day, the District Court issued a "Temporary Restraining Order" under § 27-19-314, MCA, based on the "significant risk" that Paul and any other estate creditors

---

[2] Paul alleged that Terry's creditor claims totaled over $887,000, and his creditor claims totaled over $2,000,000.

would "suffer immediate and irreparable injury" absent personal-representative restraint. The court ordered that Jaimie, as personal representative, was prohibited from using or distributing estate funds without all known creditors' consent or a court order. The court also set a hearing on the matter of injunctive relief for March 3, 2025, and ordered responsive briefing.

¶7 Jaimie objected to issuance of a "preliminary injunction" on two grounds. First, she said that Paul had not "followed the statutory probate procedures" to "convert[] the informal probate into a formal probate" under Title 72, chapter 3, part 3, MCA, or to "invoke supervised administration" of the Estate under Title 72, chapter 3, part 4, MCA. And, in any event, Paul had no standing to do either because he was not an "interested person" under the probate code because he failed to file a timely creditor claim against the Estate.[3] In the alternative, Jaimie argued that Paul had not established the elements required for a "preliminary injunction" under § 27-19-201(1), MCA.

¶8 In reply, Paul argued that he was not required to petition for formal probate or supervised administration of the Estate before asking the court to restrain Jaimie's conduct as personal representative under § 72-3-617, MCA ("order restraining personal representative"). Paul explained that he was not asking for "a full administration and settlement of the Estate under ongoing court supervision." Rather, he only sought "to prevent the Estate from making distributions for non-estate expenses," particularly those

_____

[3] Jaimie denied that Paul's February 2023 Thomas Ent lawsuit was a timely creditor claim under Title 72, chapter 3, part 8, MCA.

that benefitted Jaimie individually at the expense of estate creditors. He asserted that his Thomas Ent lawsuit, which included the Estate as a defendant, entitled him to seek relief under § 72-3-617, MCA.

¶9 At the March 3, 2025 hearing, Jaimie immediately objected to the proceedings as exceeding the District Court's jurisdiction in the informal probate matter. Paul answered that § 72-3-617, MCA, authorized the court to restrain Jaimie's conduct as personal representative without a petition for formal probate or supervised administration and without any formal determination as to his status as an estate creditor. The court concluded that it had jurisdiction over the matter and "the ability to restrain" Jaimie "under the probate statutes." Then, the District Court "convert[ed]" the matter "to a formal probate" to "make sure that any further distributions are appropriate."

¶10 The record of the March 3, 2025 hearing establishes that the central issue was whether Jaimie could or could not pay attorney fees incurred in the Thomas Ent litigation out of the Estate. After hearing Jaimie's testimony and counsels' arguments, the court decided to restrain Jaimie's ability as personal representative to make estate distributions. The court said it would authorize estate payments for reasonable attorney fees but that it wanted "to take a look at them" first, to "make sure they look reasonable," and would expedite rulings on any objections.

¶11 On March 4, 2025, the District Court, "pursuant to MCA § 72-3-617," issued a "Preliminary Injunction" restraining Jaimie from "using and/or making any distributions of Estate funds without consent of the court" based on its ruling that "Paul's interests and

6

the interests of other creditors will be jeopardized" if Jaimie's conduct as personal representative were not so restrained.  The court did not require a bond.

**Resolution of the Thomas Ent Litigation**

¶12    In April 2025, Jaimie immediately filed an "interlocutory appeal" of the March 4, 2025 "Preliminary Injunction" pursuant to M. R. App. P. (6)(3)(e).  Since initiation of this appeal, the Thomas Ent litigation in Cause No. DV 23-31 has resolved.  Both parties call our attention to the June 2025 jury verdict which, as of January 2026, Jaimie has appealed.  That appeal is also currently pending before this Court in Cause No. DA 26-0032.

¶13    Acknowledging these overlapping civil and probate proceedings, we nevertheless limit our decision today strictly to the issues presented in this appeal.  Paul's status as an estate creditor and the validity or timeliness of his creditor claims are not before this Court, and we neither comment nor opine on those issues here.  We decide only whether the District Court had jurisdiction to restrain Jaimie's conduct as personal representative, whether it abused its discretion in doing so, and whether it was required to impose a bond.

## STANDARD OF REVIEW

¶14    We review a lower court's factual findings for clear error, its conclusions of law de novo for correctness, and its discretionary decisions for an abuse of discretion. *In re Estate of Hannum*, 2012 MT 171, ¶¶ 18-19, 366 Mont. 1, 285 P.3d 463.  A court abuses its discretion when it acts arbitrarily, without conscientious judgment or exceeding the bounds of reason, resulting in substantial injustice.  *Hannum*, ¶ 18.  We review

7

questions of subject matter jurisdiction de novo for correctness.  *In re Estate of Scott*, 2023 MT 97, ¶ 9, 412 Mont. 303, 529 P.3d 867.

## DISCUSSION

¶15  *1. Whether the District Court had jurisdiction to restrain Jaimie's conduct as personal representative.*

¶16  Jaimie argues on appeal that the District Court exceeded its jurisdiction by sua sponte "converting" the informal probate to "formal probate."  This assertion is incorrect for numerous reasons.  As will be explained below, "informal probate," "formal testacy," and "supervised administration" are terms of art with specific statutory meaning.  Despite its use of imprecise terminology at the March 3, 2025 hearing, and in its March 4, 2025 order, for reasons explained below, the District Court did not convert the informal probate to a formal probate and did not issue a "preliminary injunction."

**District Court Jurisdiction Over All Probate Matters**

¶17  Montana's probate code provides that district courts have jurisdiction over "all subject matter relating to estates of decedents."  Sections 72-1-202(1)(a), 72-3-111, MCA.  "The court has full power to make orders, judgments, and decrees and take all other action necessary and proper to administer justice in the matters which come before it."  Section 72-1-202(2), MCA.  Though limited by the probate code, the district court nonetheless has "broad jurisdictional powers in the handling of probates."  *In re Estate of Barber*, 239 Mont. 129, 135, 779 P.2d 477, 481 (1989).  The court's probate jurisdiction extends to all matters related to a decedent's estate, including construction of wills, determinations of testacy, determinations of heirs and successors, and estate administration, including

8

settlement, distribution, and appointment and supervision of a personal representative. *See* § 72-1-202, MCA; *In re Estate of Cooney*, 2019 MT 293, ¶ 7, 398 Mont. 166, 454 P.3d 1190.[4]

**"Informal Probate" Versus "Formal Testacy Proceedings"**

¶18    Title 72, chapter 3, part 2, MCA, governs "informal probate" of a will and "informal appointment" of a personal representative.  "Formal testacy and appointment proceedings" are governed by Title 72, chapter 3, part 3, MCA.  Informal probate is a non-adjudicative proceeding conducted primarily by the clerk of court with only limited notice to interested persons.  *In re Estate of Spencer*, 2002 MT 304, ¶ 15, 313 Mont. 40, 59 P.3d 1160; *In re Estate of Quirin*, 2013 MT 231, ¶ 12, 371 Mont. 284, 309 P.3d 975; § 72-3-605, MCA.  Formal testacy proceedings, by contrast, are adjudicative proceedings initiated by petition and resolved by court order after notice and opportunity to be heard. Sections 72-3-301, -302, -317, -1001, -1003, MCA; *see also* § 72-1-103(19), (24), MCA (defining "informal" and "formal" proceedings).

**Controlling the Personal Representative**

¶19    Title 72, chapter 3, parts 5 and 6, MCA, generally govern a personal representative's administration of an estate and define the personal representative's powers and duties.

---

[4] This Court has previously recognized that probate jurisdiction does not extend to "matters equitable in nature" because probate is a "special proceeding," not an "action at law" or "suit in equity."  *See Cooney*, ¶¶ 7, 10-16 (citing *State ex rel. Reid v. Fifth Jud. Dist. Ct.*, 126 Mont. 586, 591-92, 256 P.2d 546, 549-50 (1953)); *In re Estate of Haugen*, 2008 MT 304, ¶¶ 9-13, 346 Mont. 1, 192 P.3d 1132; *In re Estate of Colver*, 2025 MT 146, ¶¶ 18-24, 423 Mont. 24, 574 P.3d 857; *Scott*, ¶¶ 10-11, 17.  *Compare* Title 27, chapter 1, parts 1 and 4, MCA (defining types of "actions" and remedies).

"By accepting appointment, a personal representative submits personally to the jurisdiction of the court in any proceeding relating to the estate that may be instituted by any interested person." Sections 72-3-511, -521, MCA. Once appointed, the personal representative takes possession and control of the estate and "shall . . . take all steps reasonably necessary for the management, protection, and preservation of the estate in [her] possession." Section 72-3-606, MCA. She holds title to the estate property, but only "in trust . . . for the benefit of the creditors and others interested in the estate." Sections 72-3-619(1), -613, -807, -808, MCA. A personal representative's powers are constrained by her duties as a fiduciary—she "is under a duty to settle and distribute the estate of the decedent . . . consistent with the best interests of the estate" and must "use [her] authority . . . for the best interests of successors to the estate." Section 72-3-610, MCA. She has a duty to avoid conflicts of interest and may be personally civilly liable for any breaches of her fiduciary duties or other tortious conduct. Sections 72-3-612, -615, -616, MCA.

¶20 Generally, "a personal representative shall proceed expeditiously with the settlement and distribution of a decedent's estate . . . without adjudication, order, or direction of the court." Section 72-3-605, MCA.[5] However, the personal representative is not exempt from court oversight. *See* § 72-3-605, MCA (qualifying personal representative's power to proceed unsupervised "except as otherwise specified under this

---

[5] Although she may proceed generally unsupervised, a personal representative remains able to "invoke the jurisdiction of the court, in proceedings authorized by [the probate] code, to resolve questions concerning the estate or its administration." Section 72-3-605, MCA.

code or [as] ordered . . .").  Accordingly, there are limited circumstances where the court

may intervene in her administration of an estate, whether probated informally or formally.

¶21    "Supervised administration" is one such means to limit and control a personal

representative's power of estate administration.

> Supervised administration is a single in rem proceeding to secure complete
> administration and settlement of a decedent's estate under the continuing
> authority of the court, which extends until entry of an order approving
> distribution of the estate and discharging the personal representative or other
> order terminating the proceeding.
>
> A supervised personal representative is responsible to the court, as well as to
> the interested parties, and is subject to directions concerning the estate made
> by the court on its own motion or on the motion of any interested party.

Section 72-3-401, MCA.  Like formal testacy proceedings, §§ 72-3-303, -304, MCA,

"supervised administration" is initiated by petition and stays any action in informal

probate.  Sections 72-3-402, 403(1)-(2), MCA.  Also like in formal testacy proceedings, a

previously-appointed personal representative subject to "supervised administration" "may

not exercise the power to distribute any estate" unless expressly authorized by the probate

court.  Sections 72-3-401, -403(3), -405, MCA; *compare* § 72-3-304, MCA.

¶22    Separate from "formal testacy" and "supervised administration," § 72-3-617, MCA,

provides court authority to restrain the personal representative, to wit:

> On petition of any person who appears to have an interest in the estate, the
> court *by temporary order may restrain* a personal representative from
> performing specified acts of administration, disbursement, or distribution or
> exercise of any powers or discharge of any duties of the office *or make any
> other order* to secure proper performance of the personal representative's
> duty if it appears to the court that the personal representative otherwise may
> take some action that would jeopardize unreasonably the interest of the

11

applicant or of some other interested person. Persons with whom the personal representative may transact business may be made parties.

Section 72-3-617(1), MCA (emphasis added); *compare* §§ 72-3-304, -403 (court's restraining authority in formal testacy and supervised administration). The statute further requires that "the matter must be set for hearing within 10 days unless the parties otherwise agree" and notice "must be given to the personal representative and the personal representative's attorney of record, if any, and to any other parties named defendant in the petition." Section 72-3-617(2), MCA.

¶23 Section 72-3-617, MCA, authorizes restraining the personal representative regardless of whether the estate is being administered informally or formally.[6] The court's power to restrain under § 72-3-617 is limited only by the statute's express terms—it must "*appear[] to the court* that the personal representative otherwise *may take some action* that would *jeopardize unreasonably* the *interest of the applicant* or of *some other interested person*." (Emphasis added.) *See also* § 72-1-103(25), MCA (broadly defining "interested person").

**The District Court Had Jurisdiction Under § 72-3-617, MCA, to Restrain Jaimie's Conduct as Personal Representative**

¶24 Jaimie frames the jurisdictional issue here as follows: the District Court lacked jurisdiction to consider Paul's motion for injunctive relief because no one formally

---

[6] *See* § 72-3-617, MCA, Official Comments (Distinct from § 72-3-304, "which provides for a restraining order against a previously appointed personal representative incident to a formal testacy proceeding," § 72-3-617 "describes a remedy which is available for any cause against a previously appointed personal representative, whether appointed formally or informally.").

12

petitioned to "convert" the informal probate to "formal probate" or "supervised administration." This argument misapprehends the scope of the court's probate jurisdiction. When a contested matter invoking the district court's jurisdiction is properly before it, the probate code does not prohibit the court from exercising supervisory authority necessary to resolve that dispute.

¶25 The parties rely on *Spencer*, where we held that the personal representative's request for court approval of settlement and distribution of the estate invoked the district court's jurisdiction and "converted" the informal proceedings to "formal proceedings" for the limited purpose of resolving the issues raised.[7] *Spencer*, ¶¶ 14-15, 23. Although this case is not factually or procedurally identical, *Spencer* confirms the broader principle that invoking court intervention does not transform "informal proceedings" to "formal proceedings" except as necessary to resolve the matter presented. The District Court's authority arose from the dispute before it and did not depend on conversion of the probate proceeding.

¶26 The record as a whole confirms that the District Court did not "convert" the informal probate of Sean's will to "formal testacy proceedings" under Title 72, chapter 3, part 3, or to a "supervised administration" under Title 72, chapter 3, part 4, at the March 3,

---

[7] Jaimie also relies on *Spencer* for the proposition that she was entitled to notice of "conversion" of the proceedings to "formal probate." Her reliance on *Spencer* is misplaced. First, the estate creditor in *Spencer* received no notice of either the adjudicatory proceedings or subsequent court order adversely deciding its right of recovery. Jaimie, on the other hand, had over two weeks' notice of the March 3, 2025 hearing on Paul's motion, submitted briefing, and appeared at the hearing with counsel to argue against injunctive relief. Second, the March 3, 2025 proceeding did not adjudicate Jaimie's *rights*—it only limited her power as personal representative to make estate distributions without court oversight.

2025 hearing on Paul's motion for injunctive relief. "Formal testacy proceedings" and "supervised administration" are terms of art with specific statutory meaning. Sections 72-3-301, -302, -401, MCA. As Paul explained, he was not asking the court for a testacy determination, formal appointment of a different personal representative, or a "complete administration and settlement" of the Estate. *Compare* §§ 72-3-617, -302, -401, MCA.

¶27 Instead, Paul claimed that Jaimie, in violation of her fiduciary duties as personal representative, had so far paid $700,000 out of the Estate for non-estate purposes, jeopardizing the Estate's ability to satisfy creditor claims being concurrently litigated in separate civil proceedings. To preserve the Estate for creditors, Paul asked the court to restrain Jaimie's ability to distribute estate funds, by subjecting them to court oversight and approval. As in *Spencer*, the previously "informal proceedings" became "formal proceedings," not formal probate, upon Paul's request for court intervention and only for the limited purpose of determining whether to restrain Jaimie's conduct as personal representative.

¶28 Montana's probate code does not preclude a district court from intervening in informal probate when its jurisdiction is properly invoked. Paul's motion sought court control over Jaimie's conduct as personal representative. That request fell squarely within § 72-3-617, MCA. Even if Paul did not expressly seek relief under § 72-3-617 in his motion, he eventually invoked that statute in briefing. The gravamen of Paul's request was for the court to control and restrain Jaimie's conduct as personal representative. We hold

14

that, under these circumstances, the District Court had jurisdiction to restrain Jaimie's conduct as personal representative of the Estate pursuant to § 72-3-617, MCA. We turn next to whether the court abused its discretion in restraining her conduct.

¶29    2.  *Whether the District Court abused its discretion in restraining Jaimie's conduct by requiring her to seek prior court approval for any estate distributions.*

¶30    Jaimie's primary argument on appeal is that Paul was not entitled to a "preliminary injunction" because he could not meet all four requirements of § 27-19-201(1), MCA. She only briefly addresses § 72-3-617, MCA, in reply, arguing that Paul was not an "interested person" entitled to a restraining order under that statute. We need not address whether Paul met the § 27-19-201(1) factors, however, because this case turns not on the preliminary injunction statute, § 27-19-201, MCA, but on the probate court's independent statutory authority under § 72-3-617, MCA, to supervise and restrain a personal representative. We conclude that, despite the parties' and court's imprecise language, the District Court restrained Jaimie's conduct as personal representative pursuant to § 72-3-617, MCA, not under Title 27, chapter 19, MCA.

**Section 72-3-617 "Order Restraining Personal Representative"—Not § 27-19-201 or § 27-19-314—is the Applicable Statute**

¶31    In contrast to the "preventative relief" of a "preliminary injunction" available in "civil actions," under Title 27, chapter 19, MCA,[8] § 72-3-617, MCA, authorizes a specific form of restraint on personal representative conduct available exclusively in proceedings

---

[8] *See* §§ 27-1-102, -103, -104, -107, -401, -403, 27-19-101, -201, MCA.

under Montana's probate code. *See* § 1-3-225, MCA ("particular expressions qualify those which are general").

¶32 We have consistently recognized that a court "sitting in probate" has jurisdiction only as provided in Title 72. Although probate may be quasi-"civil" for certain purposes,[9] it is a proceeding whereby *a will is proved* and an *estate administered* and is therefore not adversarial in the same sense as "civil actions," i.e., *claims prosecuted by one party against another*.[10] *Compare* § 72-1-101, MCA (purposes of probate are to "discover and make effective the intent of a decedent in distribution of the decedent's property" and "promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to the decedent's successors"); §§ 27-1-102, -103, -104, -107, MCA (purposes of "civil actions"); M. R. Civ. P. 2(a) ("a civil action is begun by filing a complaint").

---

[9] The Rules of Civil Procedure apply to "formal proceedings," as specifically defined under the probate code, unless they conflict with specific procedural rules provided in the code. Section 72-1-207, MCA; *In re Estate of Erickson*, 2017 MT 260, ¶¶ 14-21, 389 Mont. 147, 406 P.3d 1. We have also said that, for purposes of § 3-1-804, MCA, substitution rules, a petition for "supervised administration" brings informal probate "under the supervision of the district court and sufficiently partakes the elements of a civil action to trigger application of § 3-1-804, MCA." *In re Estate of Greene*, 2013 MT 174, ¶¶ 9-15, 370 Mont. 490, 305 P.3d 52. We qualified in *Greene*, however, that "all of the attributes of an ordinary civil action referred to in § 3-1-804(1), MCA, may not be present in a supervised administration of an estate."

[10] *Accord State ex rel. Biering v. Dist. Ct.*, 115 Mont. 174, 181, 140 P.2d 583, 586-87 (1943) ("A probate proceeding is in the nature of a proceeding *in rem*, and the entire world is brought before the court by the process provided therefor. The estate itself is taken into *custodia legis*. The assets of an estate are thus secured as against the entire world, in the hands of an executor or administrator . . . ." (citations omitted)).

Accordingly, probate is a "special proceeding," not an "action at law" or a "suit in equity." *Cooney*, ¶ 7; *In re Estate of Williams*, 2023 MT 72, ¶ 21, 412 Mont. 58, 528 P.3d 1087.[11]

¶33 Moreover, "orders restraining a personal representative" issued under § 72-3-617, MCA, have express proof requirements distinct from the proof requirements for "preliminary injunctions" or "temporary restraining orders" issued in "actions" under §§ 27-19-201(1) and -314, MCA. For example, § 27-19-201(1), MCA, requires a showing of likely "success on the merits" and "irreparable harm" absent injunctive relief. As such, "preliminary injunctions" serve "to preserve the relative positions of the parties until a *trial on the merits can be held.*" *Cross v. State*, 2024 MT 303, ¶ 52, 419 Mont. 290, 560 P.3d 637 (citing United States Supreme Court cases and the legislative requirement of § 27-19-201(4) that the -201(1) preliminary injunction standard follows federal law) (emphasis added)).[12] *See also Meine v. Hren Ranches, Inc.*, 2020 MT 284, ¶ 26, 402 Mont. 92, 475 P.3d 748 ("a preliminary injunction is merely a provisional remedy that terminates and is superseded by *the final judgment on the merits of the underlying claim(s)*" (emphasis added)). By comparison, "orders restraining personal representatives" require only a

---

[11] *See also Neal v. State*, 2003 MT 53, ¶¶ 15-19, 314 Mont. 357, 66 P.3d 280 (proceedings initiated by filing a petition "invok[ing] a specific statutory procedure" are "special proceedings," such as driver's license suspension or revocation contests, temporary guardianships, or proceedings regarding trusts).

[12] Section 27-19-201(4), MCA, specifically provides that the standard for entitlement to a "preliminary injunction" is meant to "mirror the federal preliminary injunction standard." Because there is no equivalent "federal probate," it is apparent on its face that § 27-19-201(1) is not intended to apply to probate proceedings; to construe it as such would render § 27-19-201(4) meaningless. *See Marshall v. Marshall*, 547 U.S. 293, 308-12, 126 S. Ct. 1735, 1746-48 (2006) (federal courts have no jurisdiction over "the probate or annulment of a will and the administration of a decedent's estate"—that jurisdiction is reserved to the states).

showing that "it appears to the court that the personal representative otherwise may take some action that would jeopardize unreasonably the interest of the applicant or of some other interested person" if her conduct is not restrained. Showings of entitlement to relief under § 72-3-617 and § 27-19-201 therefore look very different, with § 72-3-617 having unique requirements applicable only in the probate and estate administration context.

¶34 Also, the broad scope of a "preliminary injunction" is distinct from the narrow scope of an "order restraining a personal representative" under § 72-3-617, MCA. Title 27 defines a "preliminary injunction" broadly as "an order requiring a person to refrain from a particular act." Sections 27-19-101, 27-1-403, MCA. By contrast, an order issued under § 72-3-617 is limited to restraining "a personal representative from performing specified acts of administration, disbursement, or distribution or exercis[ing] any powers or discharge of any duties of the office" or to "secur[ing] proper performance of the personal representative's duty." In other words, § 72-3-617 specifically authorizes the probate court to control a personal representative's administration of an estate. The relief available under § 72-3-617 is thus specifically tailored to the probate court's sole and exclusive jurisdiction, unlike the general relief available under Title 27 for "civil actions" over which a district court has no jurisdiction under the probate code.

¶35 "Preliminary injunctions" and "orders restraining a personal representative" also have different notice and time requirements. While Title 27, chapter 19, provides that a court may, without notice, issue a "temporary restraining order" pending adjudication of the application for a "preliminary injunction," § 72-3-617, MCA, does not provide for such

18

a bifurcated procedure. Instead, when requesting an order under § 72-3-617, the party seeking restraint must give notice to the personal representative and her attorney and the court must set a hearing on the request within 10 days. Section 72-3-617 does not provide for a provisional order pending the hearing on and disposition of a request to restrain the personal representative. *Compare* §§ 27-19-314 through -318, MCA.

**The Court was Within its Discretion to Restrain Jaimie's Conduct as Personal Representative Under § 72-3-617, MCA**

¶36 While we have not previously considered the standard of review for an order issued pursuant to § 72-3-617, MCA, we conclude that, like other court determinations regarding supervision, management, or removal of a personal representative, an order restraining a personal representative's conduct under § 72-3-617, MCA, is discretionary and therefore reviewed for an abuse of discretion. Section 72-3-617, MCA (the court "*may* restrain"); *accord Williams*, ¶¶ 17, 34; *Hannum*, ¶¶ 27-28, 33. We now consider whether the District Court abused its discretionary authority under § 72-3-617, MCA.

¶37 Jaimie's limited arguments against application of § 72-3-617, MCA, pertain solely to her claim that Paul was not an "interested person" and therefore not entitled to injunctive relief under § 72-3-617. Montana's probate code defines an "interested person" to mean, as pertinent here:

> creditors . . . and any others having a property right in or claim against . . . the estate of a decedent.

Section 72-1-103(25), MCA. The meaning of "interested persons" "as it relates to particular persons may vary from time to time and must be determined according to the

19

particular purposes of and matter involved in any proceeding." Section 72-1-103(25), MCA.

¶38 Section 72-3-617, MCA, provides for court restraint "on petition of any person who appears to have an interest in the estate." This standard is explicitly broad; it does not limit requests to restrain a personal representative to actual "interested persons," but only to those who "*appear* to have an interest in the estate." The District Court could reasonably conclude that Paul "appeared" to have an interest in the Estate because he asserted (1) an ownership interest in Thomas Ent, a defendant in his separate civil lawsuit which Jaimie testified was an "estate asset" at the March 3, 2025 hearing; and (2) a creditor claim of almost $2,000,000 against the Estate. Paul therefore had standing under § 72-3-617, MCA, to request an order restraining Jaimie's conduct as personal representative.

¶39 The standard for entitlement to relief under § 72-3-617, MCA, is also intentionally broad. The court may restrain the personal representative "if it *appears to the court* that the personal representative otherwise *may* take some action that would jeopardize unreasonably the interest of the applicant or of some other interested person." This standard does not require definitive proof of a creditor claim or of actual mismanagement; it requires only a reasonable basis for concern.

¶40 Paul and Sean's mother, Terry, asserted combined creditor claims approaching $3,000,000, giving rise to at least an apparent interest in the Estate.[13] At the same time,

---

[13] Jaimie also testified at the March 3, 2025 hearing that Terry co-owned several Merrill Lynch accounts with Sean.

20

Jaimie—serving both as a defendant in the Thomas Ent litigation and as personal representative for the Estate—was alleged to have paid approximately $700,000 in estate funds for non-estate purposes. On this record, the District Court could reasonably determine that continued distributions without court oversight risked jeopardizing the Estate's ability to satisfy potential creditor claims.

¶41 Nothing in the express language of § 72-3-617, MCA, required the District Court to resolve Paul's creditor status or to determine that Jaimie had in fact breached her fiduciary duties before acting. Rather, the statute authorizes preventative intervention where the risk of improper administration appears and regardless of whether that administration occurs in informal or formal probate. Read in the context of the probate code as a whole, § 72-3-617, MCA, functions as a supervisory tool, permitting a district court to supervise and control a personal representative's "specified acts of administration, disbursement, or distribution" to ensure proper performance and protect the estate for all interested parties. That is what occurred here. The District Court did not prohibit administration of the Estate; it required oversight.

¶42 Although the court labeled its order a "Preliminary Injunction," the substance of the order, and the court's express reliance on § 72-3-617, MCA, controls. The March 4, 2025 order was *not* a "preliminary injunction" under Title 27, chapter 19; it was an "order restraining a personal representative" issued pursuant to § 72-3-617, MCA. We hold that the District Court did not abuse its discretion in restraining Jaimie's conduct under § 72-3-617, MCA.

¶43   *3. Whether the District Court was required to impose a bond.*

¶44   Finally, Jaimie contends that the District Court was required to impose a bond under § 27-19-306, MCA, when granting Paul a "preliminary injunction."  Section 27-19-306(1), MCA, provides:

> on granting an injunction or restraining order, the judge shall require a written undertaking to be given by the applicant for the payment of the costs and damages that may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Section 27-19-306(1)(b)(ii), MCA, provides that the undertaking "may be waived in the interest of justice."

¶45   In contrast, § 72-3-617, MCA, has no bond requirement.  Montana's probate code provides for bond in specific circumstances, none of which were implicated here.[14]  For all the reasons stated above, the District Court's March 4, 2025 order restraining Jaimie's conduct as personal representative was issued under § 72-3-617, not § 27-19-201. Accordingly, neither the bond requirements nor waiver provisions of § 27-19-306, MCA, applied and the court was not required by any law to impose a bond incident to its March 4, 2025 order.

## CONCLUSION

¶46   We hold that the District Court had jurisdiction to restrain Jaimie's conduct as personal representative of the Estate under § 72-3-617, MCA, and did not abuse its discretion in requiring Jaimie to obtain court approval before making estate distributions.

---

[14] *See* §§ 72-3-513 through -516, MCA (bond requirements for personal representatives).

22

Finally, we hold that the court was not required to impose any bond incident to its March 4, 2025 order.

¶47    Affirmed.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE